## DUNCAN & HOOPER vs. STEWART.

1. A grant of letters of administration on the estate of a living man, who is supposed to be dead, is absolutely void; and if the administrator sells the personal property, under an order of court regularly made, he is a trespasser.

2. But the purchaser of a slave at the sale cannot, while holding possession under the contract, or if the slave has died while thus in his possession, resist the payment of the note given for the price, if sued by the administrator; and if, on the re-appearance of the supposed decedent, the administrator assigns the note to him by endorsement, the assignee may sue on it in his own name, and recover, notwithstanding the death of the slave prior to the endorsement.

3. Where one assumes to act in a particular capacity, he will be estopped from denying the position which he has taken, when such a denial would operate to defeat rights attaching to the contract itself; but the doctrine of estoppel does not extend to matters affecting the remedy merely, which are entirely foreign to and disconnected from the contract, or the character in which the parties entered into it.

APPEAL from the Circuit Court of Russell.

Tried before the Hon. JOHN GILL SHORTER.

ASSUMPSIT by Samuel J. Stewart against the appellants, on a promissory note, of which the following is a copy:

"$1085. By the 14th day of December next, we promise to pay William Davis, administrator of Samuel J. Stewart, or bearer, one thousand and eighty-five dollars, for value received, this 11th Jan'y, 1851. (Signed) BRYANT DUNCAN.
GEO. D. HOOPER."

The plaintiff declared on this note as endorsee of the payee, and added the common money counts; and the defendants pleaded, "non assumpsit, with leave to give in evidence anything which might be specially pleaded in bar." On the trial, after the plaintiff had read in evidence the note and endorsement, the defendants proved that the note was given for the price of a slave which the said Duncan had purchased at a public sale, made by said Davis as the administrator of said Samuel J. Stewart, under an order of the Probate Court; that letters of administration on the estate of Stewart, who had not been heard of for eight or ten years, and was supposed

Duncan & Hooper v. Stewart.

to be dead, had been granted to Davis previous to the said sale, (the date is not stated,) and that the slave then belonged to Stewart; that Davis, as administrator of Stewart, gave said Duncan a bill of sale to the slave, which was read in evidence, and that the slave went into his possession under the sale, and remained in his possession until December, 1851, at which time the slave died; that Stewart re-appeared in Russell county in January, 1852, and made inquiries after his property, and received from Davis the note in suit, the endorsement being dated February 9, 1852.

This being all the evidence, the court charged the jury, that, if they believed it, they must find for the plaintiff; to which charge the defendants excepted, and they now assign it for error.

WHITE & PARSONS, for the appellants:

1. This declaration contains a special count on the note and endorsement, and the money counts. The record shows the slave was never converted into money by Duncan, but died in his possession in December, 1851. Therefore there can be no recovery on the money counts.—Crow v. Boyds, 17 Ala. 51; Jones v. Hoar, 5 Pick. 285; 1 J. J. Marsh. 543; 3 Dana 552; 3 Watts 277. In addition to this, there is this further reason: Hooper is in no way connected with any act of conversion, and if not liable on the note, he is not liable at all. He has the right to stand upon the precise terms of the contract which he signed.—McKay v. Dodge, 5 Ala. 388.

2. The record shows this note is a portion of the assets of the estate of Stewart. Davis, the administrator, therefore, could not transfer a title to it by his endorsement, so as to enable Stewart to sue on it in his own name.—Harbin v. Levi, 6 Ala. 399; Dunham v. Grant, 12 ib. 105. These cases "are not controverted" in Tompkies v. Reynolds, 17 Ala. 115, and their doctrine is distinctly admitted by this court in a subsequent case—Arrington v. Blair, adm'r, 19 Ala. 244. The charge is therefore erroneous on this ground. It is no answer to say, the endorsement is to the real owner, who turns out to be alive, instead of dead. This is an evasion of the question. The question is, whether this note is the evidence of a contract that can be transferred by endorsement to another.

27

The decisions referred to show most conclusively that it is not, and that it cannot be transferred.

3. The evidence shows that the Orphans' Court of Russell county had no jurisdiction to grant administration on Stewart's estate. This renders the whole proceeding void, and all that was done under it is void also. This is conceded by defendant's counsel, and they rely on a ratification in February, 1852, the slave having died in December previous. We do not dispute that an act done for another, by a person not assuming to act for himself, but for such other person, though without any precedent authority whatever, becomes the act of the principal, if subsequently ratified by him. But we do insist " that a ratification can only be effectual between the parties when the act is done by the agent avowedly for or on account of the principal, and not when it is done for or on account of the agent himself, or of some third person."—Story on Agency, § 251; Wilson v. Tumman, 6 Man. & Gran. 236. It is also said : " When the party making the contract had not a shadow of authority to contract for the third person, and did not profess at the time to act for him, it seems that the subsequent assent of such third party to be bound as principal has no operation."—Chitty on Cont. (8th Am. ed.) top p. 202 ; Saunders v. Griffiths, 5 B. & C. 406. " The rule as to ratification applies only as to the acts of one who professes to act as the agent of a person who afterwards ratifies."— Vere v. Ashby, 10 B. & C. (21 Eng. Com. L.) 82 ; Wilson v. Tumman, 6 Man. & Gran. 235.

The ratification must be of the whole transaction, or of none ; it cannot be ratified in part, and repudiated as to the balance.—Story's Agency, § 250 ; Wilson v. Poulter, 2 Stra. 859; Smith v. Hudson, 4 Term R. 211; Hovil v. Pack, 7 East 164; 8 Pick. 56; 19 ib. 300.

This administrator sold all the title, &c., of Saml. Stewart ; he did not warrant in terms ; but suppose he had, he would not be personally liable, for he did it as administrator, and the benefit enures to the estate.—Craddock v. Stewart's Adm'r, 6 Ala. 79. Could Stewart be made liable for a breach of soundness, if this bill of sale had contained it? or, if there had been a deceit, would he be liable for it? Clearly he would not be liable for either,—yet he gets all the benefit of

the contract, and is not liable for anything. As to Davis' liability as agent, see Story's Agency, § 265; Smout v. Ilbery, 10 Mees. & W. 1; Story's Agency, § 263.

This ratification came too late. The negro died in December, and Stewart did not do any act tending to show a ratification until February thereafter. Whose slave was he at the time of his death? Clearly and unquestionably Stewart's. He had done nothing which tended towards a sale at that time. Suppose Stewart had attempted to sell, and actually did sell, Duncan this dead slave on the 9th of February, 1852, they both supposing him to be alive at that time; would it be a valid and binding contract? Certainly not. It lacks one of the essential elements of a contract, viz., a subject-matter. Parsons on Agency 44-5, note t, and cases cited in note t.

The parties contracted under a mistake of fact. "An error in fact takes place, when some fact is supposed to exist which really does not exist."—20 Wend. 174; 1 ib. 360; Bell v. Gardner, 4 Man. & Gran. 11; Kelly v. Solari, 9 Mees. & W. 54; 17 Mass. 33; 4 Dallas 234; 10 Wheat. 333.

BELSER & RICE, contra:

An administrator, with whom as such a contract is made, acquires a right thereto as an individual, if he acted without authority and did not bind the estate.—Reynolds v. Tompkies, 17 Ala. 109; Harbin v. Levi, 6 ib. 399; Hall v. Chenault, 13 ib. Davis, therefore, might have sued individually on the note, and his assignee would have the same right. But he might also have sued as administrator, and the defendants, in either case, would have been estopped from saying that he never was administrator, or from setting up any defence based upon the idea that he never was administrator.—Harbin v. Levi, supra; Worthington v. McRoberts, 7 Ala. 814; Griggsby v. Nance, 3 ib. 347; Hewes v. Parkman, 20 Pick. 90; Rotch v. Hawes, 12 ib. 126. And if the defendants would have been thus estopped as against Davis, they are equally estopped as against the assignee of Davis.—McCravey v. Remson, 19 Ala. 430; Barclay v. Moore, 17 ib. 634.

If Davis had no authority as administrator, and did not therefore bind Stewart, nor his estate, he bound himself personally by the contract.—Whiteside v. Jennings, 19 Ala. R.

Suppose Stewart, before ratifying the sale, had sued Duncan for the conversion of the slave, even after his death; he must have recovered, for the purchase by Duncan from Davis was a conversion. This recovery would have been a breach of the contract on the part of Davis, who sold " all the right of Stewart" to the slave; and Duncan could then recover the value from Davis.—Pinkston v. Huie, 9 Ala. This shows that the contract was not void, but might be enforced by Duncan; and if by Duncan, it may also be enforced by Stewart, or his assignee.—Chenault v. Hall, 13 Ala.; Reynolds v. Tompkies, 17 ib. 109; Barclay v. Moore, ib. 634.

The retaining of the bill of sale by Duncan is an affirmance of the contract on his part, and estops him from setting up its invalidity : so long as he retains the benefit derived from the contract, he cannot rescind.—Kimball v. Cunningham, 4 Mass.; Dill v. Camp, 22 Ala. The want of authority, and want of title, in Davis, to sell the slave, is no ground for setting aside the contract.—Pool v. Hodnett, 18 Ala. 752; Lamkin v. Reese, 7 ib.; Alderson v. Merrill, 12 ib. 580; New York v. Buffalo, 2 Hill (N. Y.) 438; Barnett v. Stanton, 2 Ala. 182; Emanuel v. Dane, 3 Camp. 299; Blay v. Street, 2 B. & Ad. 456; Power v. Wells, 2 Cowp. 818; 10 Watts 109; 2 Hill 288; 4 ib. 626; 12 Wheat. 193.

Whenever the owner of goods can maintain trespass or trover for them, he may, if they have been sold, waive the tort, and maintain *assumpsit* for the proceeds of the sale.— Young v. Marshal, 21 E. C. L. Rep. 215; Sturtevant v. Waterbury, 2 Hall (N. Y.) 453 ; Cobb v. Dows, 9 Barb. (S. C.) R. 245; Chitty on Contracts, p. 22, and notes ; Upchurch v. Norsworthy, 15 Ala. 708. The taking of Duncan's note by Davis was, in law, the same as receiving the money.—9 Ala. 803. As Stewart, then, might have maintained trover against Duncan or Davis, the latter might lawfully pay over to him, without suit, the proceeds of the sale to Duncan, viz., the note here sued on ; because a man may always voluntarily do without suit what the law would compel him to do by suit.

The fallacy in the defendants' argument lies in assuming that, whenever the authority of an administrator is void, all contracts made with him are void, and that any party contracting with him may, on that ground, defeat any promise

Duncan & Hooper v. Stewart.

made to him, although the promisor obtained all he contracted for. The note is not void, although the administration was void. For illustration: a sale of land without a writing showing the terms of the sale, is void by the statute of frauds, yet, if the purchaser gives his note for the price, the note is not void.—McRae v. Russell, 12 Ired. Law R. 227. Duncan got all that he could have obtained if the administration had been valid.

Stewart is equally entitled to recover, whether the administration was valid or void. If valid, it is too clear for argument that he must recover. If void at all, it is void to all intents and purposes, as in fact it is, (*In re* Charles Napier, 1 Eng. Ec. R. 44); and stripping the case entirely of it, it presents the plain case of A selling B's property without authority, and B ratifying the sale, by accepting the note for the price, and bringing suit upon it.—Upchurch v. Norsworthy, 15 Ala.; Reynolds v. Tompkies, 17 *ib.* 109; Nelson v. Lovejoy, 14 *ib.* 568; New York v. Buffalo, 2 Hill 438; Motley v. Man. Ins. Co., 29 Maine 337; Whitsett v. Womack, 8 Ala.

GOLDTHWAITE, J.—Although the main question in the case is one of first impression, we regard it as a very clear one. The party on whose estate the letters were granted was not dead; consequently the court acted without jurisdiction, and the administration was void.—Wms. on Ex. 400-1-2, and cases there cited. Davis, who acted as administrator, was a trespasser, and he stands as a wrong-doer selling property without title; but under such circumstances, the purchaser, while he holds under the contract of sale, cannot resist the payment of the purchase money.—Ogburn v. Ogburn, 3 Por. 126. There is nothing in the form of the note, which would prevent Davis from suing in his own name, and declaring on the note as made to himself personally, as the additional words "administrator," &c., would be held merely as words of description (Harbin v. Levi, 6 Ala. 399); and if he could recover, his assignee could, if the assignment passed to him the legal right of action in the note.

Here a technical principle is invoked in behalf of the appellants, and it is urged that, as the record shows that Davis, the payee, took out letters of administration, and made the

sale in his representative capacity, and the note was given upon this sale, Davis is concluded from denying that he was administrator, or from recovering in an action brought in his own name upon the contract, as if made to himself personally; that the appellee, as his privy, by assignment, occupies no better position, and the note, in this aspect, must be regarded as assets, and therefore no title or right of action could be derived from the assignment. Conceding, as to this argument, that the administrator could not, by virtue of his authority, assign a note which was assets of the estate he represented, so as to invest the assignee with the legal title, the question is, whether Davis, upon the facts as we have stated them, would, in a suit upon the note, be concluded from showing that it was not assets. As to the proceedings of the court which granted the letters and ordered the sale, as there was no jurisdiction, these acts amount to nothing, and Davis would not be bound by them, any more than a plaintiff would be bound by a judgment in his favor, rendered by a court which had not power to take cognizance of the case. But is he concluded, without reference to the action of the court, because he made the sale in his representative character? It is true, that where one assumes to act in a particular capacity, he will be estopped from denying the position he has taken, when such denial will operate to defeat rights attaching to the contract itself,—the law regarding his assumed character as a real one, so far as it enters into it; but we do not understand the doctrine of estoppel to extend to matters, affecting the remedy only, entirely foreign to and disconnected from the contract, or the character with which it was entered into by the contracting parties. Here, the rights of the appellants, growing out of the purchase, have no legitimate connection with, and are not in the slightest degree affected by, the fact as to whether it was assets or not. They can assert all the rights arising from the contract by way of defence, precisely the same as if the note was assets and had not been transferred, and can avail themselves of every equity against the assignee equally as against the assignor. As there was nothing that forbid the plaintiff below from showing that the note was not assets, and as the necessary proof was made upon this point, the assignment invested Stewart with the legal title. Con-

sidering the right of Davis to recover on the note, until the purchasers had taken the necessary steps to rescind, or until the real owner had recovered the property or received satisfaction for the wrong, as clear, and the right of the appellee follows necessarily. Had the former collected the note, or had he received the proceeds of the sale in money, or anything in the place of money, the real owner could have waived the tort, and recovered in *assumpsit.*—Young v. Marshall, 21 Eng. Com. Law 215; Sturtevant v. Waterbury, 2 Hall (N. Y.) Rep. 453. So he could have received any property in satisfaction. Here the evidence shows he received a note, on which the payee could have sued and recovered, and became invested with the right to sue by his assignment. The purchaser has got everything that he contracted for, and thus complete justice is done.

Judgment affirmed.