S. W. and E. D. SPRINGER v. W. M. SHAVENDER.

*Void Judgment— Want of Jurisdiction — Collateral Attack—Sale of Land of Living Persons by Administrator Erroneously Appointed—Estoppel.*

1. While mere irregularities in the conduct of a proceeding will not subject the decree therein to a collateral, or even, under some circumstances, to a direct attack, the rule is different when the allegations in the pleadings necessary to jurisdiction of the Court are untrue, and where, if the truth had appeared on the record, it would have been the duty of the Court on motion, or *ex mero motu*, to have dismissed the proceeding for want of jurisdiction; therefore,

2. Where the children of a person, under a misapprehension of the facts, admitted the allegation in a proceeding for the sale of their ancestor's land, that he was dead, and submitted to a decree for the sale of the land, they will be allowed in a collateral action to impeach such decree and to avoid the estoppel of title derived through it, by showing that their ancestor was in fact alive at the date of the decree and sale.

3. The appointment of an administrator upon the estate of a living man is void for all purposes, and everything that is founded upon it is a nullity, because there was no jurisdiction to appoint. (*Quaere*, whether an administration granted, not upon false information as to a person's death, but upon a presumption of law arising from his absence without being heard from for seven years, does not make the acts of the administration valid.)

SPRINGER *v.* SHAVENDER.

4. It is within the discretion of the trial Judge to submit specific issues, arising out of a general issue, involved in the pleadings, instead of those that are more general.

CIVIL ACTION, for trespass in cutting trees and removing timber from land, tried at Spring Term, 1894, of BEAUFORT Superior Court, before *Armfield, J.* The issues submitted and the responses to them were as follows :

1. Was George W. Dixon dead at the time of the institution of the proceedings by his alleged administrator to sell his lands and at the time of the sale thereunder ? Answer : Living.

2. Are the plaintiffs the owners of the timber standing upon the lands described in the complaint ? Answer : No.

3. Did the defendents unlawfully take possession of the said timber and convert it to their own use ? Answer : No.

4. What is the value of the said timber ? Answer : —

5. Did the defendants unlawfully take possession of the logs cut from the lands by plaintiffs ? Answer : No.

6. If so what damage has the plaintiffs sustained thereby ? Answer : None.

7. Is the defendant Wm. M. Shavender the owner of the lands described in the complaint ? Answer : Yes, the Mallison land, not Sears' land.

8. Did the plaintiff trespass upon said land. Answer : No.

9. If so what damage has the defendant sustained ? Answer : —

The plaintiffs offered to connect themselves with G. W. Dixon and to connect the defendant with the same source of title the following deeds were offered in evidence :

1. A deed from R. C. Windley to plaintiffs, dated March 24, 1886, and properly recorded.

2. A deed from W. G. Jarvis, administrator of George W. Dixon, to R. C. Windley, dated May 17, 1882.

3. A record of special proceedings, No. 190, entitled "W. G. Jarvis, administrator of George W. Dixon, against George Ann Dixon and others."

4. A deed from Alfred Pilly to George W. Dixon, dated August 10, 1869.   This deed conveyed a tract of land claimed by the plaintiffs to be the Sears land.

5. A deed from M. Shaw, Clerk and Master, to Alfred Pilly, dated November 19, 1867.   This deed is claimed to convey the Sears land.

6. Record in a foreclosure suit of John L. Pilly against Duncan McLaughlin.

7. A mortgage by Duncan McLaughlin to John L. Pilly, dated March 24, 1861.   This mortgage is also claimed to cover the Sears land.

8. A deed from Samuel L. Snell to George W. Dixon, dated February 27, 1869.   This deed conveys a tract known as the " Franklin Mallison land. "

9. A deed from Elizabeth Dixon, wife of George W. Dixon, and others, children of George W. Dixon, to Wm. M. Shavender, dated November 14, 1887.   This deed conveyed to the defendant Wm. M. Shavender two tracts of land, known as the " Franklin Mallison land and the William Sears land."   This deed was offered to show under whom defendant Shavender claimed and to estop him.

As the case was made to depend upon the finding that G. W. Dixon was living at the time of the sale, at which Windley bought, it is not necessary to give more of the record.   The other essential facts are stated in the opinion. The plaintiffs appealed.

*Mr. W. B. Rodman* and *Mr. J. H. Small*, for plaintiffs (appellants).

*Mr. Chas. F. Warren* and *Mr. J. W. Hinsdale*, for defendants.

SPRINGER *v.* SHAVENDER.

AVERY, J.: The question that confronts us at the
threshold of this investigation is one that, as we think, has
been heretofore in effect passed upon by this and other
appellate courts, but one which requires careful considera-
tion and discussion.  Where the children of a person under
a misapprehension of the facts admitted the allegation of a
petition that their ancestor was dead, and submitted to a
decree for the sale of his land by his administrator for
assets, will they be allowed collaterally to impeach such
judgment and avoid the estoppel of title derived through it,
by showing that the ancestor was at the date of the decree
actually living?  It is quite as important that courts of
inferior jurisdiction should command the confidence of the
public in the regularity and binding force of their decrees,
upon which titles depend for their validity, as that appel-
late courts should be trusted to adhere to decisions upon
the stability of which rights of property depend.  But
while mere irregularities in the conduct of a proceeding will
not subject the decree rendered therein to a collateral, or
even under some circumstances to a direct attack, the rule
is different when the allegations in the pleadings that are
essential to the jurisdiction of the court are untrue, and
where, if the truth had appeared upon the record, it would
have become the duty of the court on motion or *ex mero
motu*, to declare the suit *coram non judice*.  If, in the
special proceeding under discussion, it had appeared that
G. W. Dixon was alive or had not been admitted that he
was dead, the very basis of the jurisdiction would have been
wanting and there would have been no serious controversy
as to the duty of the Court to pronounce the judgment a
nullity, even when assailed collaterally only.  Black on
Judgments, Sec. 215, 242, 278.  The same effect must be
given to proof *aliunde*, after the decree is entered,
that the person supposed to be dead was in fact alive.

*London* v. *Railroad*, 88 N C., 584: *State* v. *White*, 7
Ired., 117; Book of Monographs (void judicial sales), 20;
*Withers* v. *Patterson*, 27 Texas, 497; *Becket* v. *Seloven*, 7
Cal., 237; *Duncan* v. *Harper*, 25 Ala., 408; *Griffith* v.
*Frasier*, 8 Cranch, 10 and 22; *Fisk* v. *Norvell*, 9 Texas, 13;
I Herman on Executions, p. 378; *Jochumsen* v. *Bank*, 3
Allen (Mass.), 87; *Johnson* v. *Beazley*, 27 Am. Rep., 285;
*Thomas* v. *People*, 107 Ill., 517; *Melin* v. *Simmons*, 30
Am. Rep., 746; *Morgan* v. *Dodge*, 44 N. H., 259; *Black*,
*supra*, § 218, 219, 220.

In the case of *Hyman* v. *Gaskins*, 5 Ired., 272 to 275,
NASH, J., discusses at length the distinction between such
probate judgments as are declared merely voidable, because
the Court or ordinary had the right to act but did not
comply with the requirements of the law, and such as are
void, because the Court had no authority to act. While
the learned Judge did not have occasion then to pass
directly upon the effect as an estoppel of administering upon
the estate of a person before his death, he cited the case of
*Griffith* v. *Frazier*, *supra*, as one in which Chief Justice
MARSHALL had " had occasion to examine the doctrine of
void and voidable letters of administration in his usual
clear and forcible manner." In the case referred to, the
learned Chief Justice had said : " But suppose adminis-
tration to have been granted on the estate of a person not
really dead. The act, all will admit, is totally void. Yet
the ordinary must always inquire and decide whether the
person whose estate is to be committed to the care of
others, be dead or in life. It is a branch of every case, in
which letters of administration issue. Yet the decision of
the ordinary that the person for whose estate he acts is dead,
if the fact be otherwise, *does not invest* the person he may
appoint with the character or powers of an administrator.
*The case in truth was not one within his jurisdiction.*

It was not one in which he had a right to deliberate. It was not committed to him by law. And although one of the points occurs in all cases proper for his tribunal, yet that point cannot bring the subject within his jurisdiction."

But this Court in a later case (*State* v. *White, supra,*) held that an action could not be maintained upon an administrator's bond, where it was shown that the supposed decedent was in fact alive when administration was granted upon his estate. The decision rested upon the ground that the probate court had no authority, as the agent of the State, to take charge of the property of a person then living, or to take the bond sued upon. This case was cited *arguendo* and approved by SMITH, C. J., in *London* v. *Railroad, supra.*

The Court, it is true, has held that where there is a decedent, the acts of an administrator who was not entitled to the appointment under the statute are valid, but that the order appointing such person is voidable in a direct proceeding instituted by those having a superior right. *Garrison* v. *Cox,* 95 N. C., 353; *Atkins* v. *McCormick,* 4 Jones, 274. This ruling rests upon the doctrine that in such cases the essential basis of jurisdiction exists, there being a decedent and an estate to be administered. The appointment of the wrong person is but an irregularity, subjecting the order of appointment to direct attack but not invalidating acts done in pursuance of the law, in the course of administration by him who has been inducted into the place by mistake. *McPherson* v. *Canlif,* 7 S. & R., (Penn.) 422; *Devlen* v. *Comm.,* 101 Pa. St., 273 (47 Am. Rep. 710) ; *Johnson* v. *Beazley,* 65 Mo., 250. In the case last cited the Supreme Court of Missouri quote the language of Judge Redfield, that the holding of the Court of Appeals of New York, in the case of *Rodrigas* v. *Ins. Co.,* 63 N. Y., 460, that the appointment of an Administrator

116—2

upon the estate of a living man could not be attacked collater-
ally, was " without precedent either in English or American
jurisprudence. " But it seems that in a later case, *Rodrigas*
v. *Savings Bank*, 76 N. Y., 318, Chief Justice CHURCH,
admitting that the authorities at common law were uni-
formly in conflict with it, rested his apparently reluctant
approval of the former case upon the ground that it was
founded upon a construction of a statute.   The appoint-
ment of an administrator upon the estate of a living man
is void for all purposes, and everything that is founded
upon it is a nullity, because there was no jurisdiction.   "It
must always be remembered, says Black, (2 Judgments,
Sec. 633) that in order to the conclusiveness of a probate
decree, or in the case of sentence emanating from any
other tribunal, it is absolutely necessary that the Court
should have possessed jurisdiction." 1 Herman on Estop-
pel, Sec. 411.   The finding by the clerk in a proceeding,
that was *coram non judice* because it was founded upon the
false basis of jurisdiction, that G. W. Dixon was dead, does
not preclude the heirs at law from showing that he was
alive.   To make it conclusive, the judgment must be
rendered by a court of competent jurisdiction (*Roulhac* v.
*Brown*, 87 N. C., 1 ;) and to give the Court authority, its
jurisdiction must extend both to the parties and the sub-
ject matter.   *Condry* v. *Cheshire*, 88 N. C., 375 ; *Morris*
v. *Gentry*, 89 N. C., 248 ; 1 Black on Judgments, Sec. 218.
We know of no principle upon which the judgment, void
as to G. W. Dixon if he were a party to this action, for
want of jurisdiction of the subject matter, could be held
valid without jurisdiction  either against the parties to
the proceeding or those in privity with them.   The Court
did not have jurisdiction of the estate of Dixon, if he was
at the time living, and it was not error to submit this
question to the jury.   Should a case be presented where

administration had been granted not upon false information
of a person's death but upon a presumption of law arising
from his absence without being heard from for seven years,
a different question might be presented.   Whether the
acts of an administrator who proceeded honestly upon a pre-.
sumption, to which the law gave the force of a fact, will
not be held, because of such presumption, to be valid, as
in some courts has been the decision, where an executor
performed a part of his imposed trust under a will after-
wards ascertained to be a forgery, we need not now deter-
mine.   To exclude a conclusion, it may be best however to
announce that should such a case arise, the question
whether it is to be governed by or distinguished from the
ruling in that before us, is an open one.   Such a case
would raise the point whether the presumption of law
that one is dead does not confer jurisdiction over a living
person's estate, when it could not possibly be acquired in
the absence of such presumption.

It was admitted that Mrs. Matilda E. Dixon, wife of G.
W. Dixon, was not a party to the proceeding, and it would
of course follow that she was not bound by the decree upon
other grounds than those relied upon by the heirs at law.
*Condry* v. *Cheshire, supra.*

The court submitted an issue involving the question
whether G. M. Dixon was living when the proceeding was
instituted and when the decree therein was rendered, and
it was answered by the jury in the affirmative.   This was
one of the questions that grew out of the general issue of
title raised in the pleadings and it has been repeatedly
decided by this Court, beginning with *Emry* v. *Railroad,*
102 N. C., 209, that it is within the discretion of the pre-
siding judge to determine whether he will submit such spe-
cific issues or only those that are more general.

There was no exception to the competency of the testi-

mony bearing on that issue, except the general one, made to the competency of Surats' deposition that the defendants were estopped by the decree in the special proceeding from denying the title under it, with the consequences, if the position had been well taken, that it would be immaterial whether he was in fact living, as Susan testified he was after the date of the sale under the decree, or dead. But now that we have held that neither the heirs at law nor the defendant, if in privity with them, are concluded, it seems to us that the finding upon the first issue defeats the plaintiff's right to recover in any aspect of the evidence. There was no evidence offered on either side tending to show a forcible trespass on the part of the defendants, and it was not error therefore to instruct the jury, as the court did without objection, that the ownership of the timber was dependent upon the title to the land entered upon. *Cohoon* v. *Simmons*, 7 Ired., 189 ; *McComac* v. *Monroe*, 1 Jones, 13 ; *Harris* v. *Sneeden*, 104 N. C., 369.

The plaintiffs proposed to show title, as the burden rested upon them to do, not by a regular chain from the State, but by making G. W. Dixon the source of title and connecting themselves through the sale and administrator's deed under the decree to R. C. Windley, and by a string of *mesne* conveyances with Dixon. They offered other deeds and evidence to connect the defendant with G. W. Dixon as a common source of title, with the view of insisting that plaintiffs' was the older and better title, and that under the established rule of evidence the defendants were precluded from denying that fact. If the plaintiffs had succeeded in proving that both derived title from the same source by means of the evidence offered, and that of the two chains so exhibited, their own was the better, it would have been as effectual proof of their right against the world, as a chain

extending back to the State, unless the defendants had connected themselves with some other older and better title.

But since it appears that the proceeding, decree, sale and deed, by which they propose to show title out of G. W. Dixon, are nullities the plaintiffs have failed to connect themselves with the alleged source of title and therefore have failed to establish their right to recover. The Judge might have instructed the jury that if they should find in response to the first issue that Dixon was living at the time of sale under the decree, they would find in response to the second issue that plaintiffs were not the owners (as in that event they would fail to show themselves to be) of any of the land for which they brought suit. In that view of the case, it is not material whether the description in either the plaintiff's or defendant's deeds was sufficient or insufficient, or whether the testimony complained of was competent or incompetent or the charge was erroneous as to matters not involved in or essential to the determination of the controversy. The response to the first issue was necessarily decisive therefore of the first six issues. The remaining three grew out of the counterclaim, which the court held that the defendants could not maintain and the defendants did not appeal.

The plaintiffs have no reason therefore to complain of the charge which was more favorable than they had a right to expect, under the view we have taken of the law. Judgment affirmed.