S. W. and E. D. SPRINGER v. W. M. SHAVENDER.

*Estoppel—Jurisdiction—Decree of Sale—Jurisdiction— Void Judgment—Collateral Attack.*

1. A judgment is void, not voidable, if the court has no jurisdiction of the subject matter of the action, and the assent or neglect of a person cannot confer on the court power to render the judgment.

2. A judgment void for want of jurisdiction of the subject matter cannot conclude any person, whether a party or stranger to the proceeding, and may be attacked collaterally.

3. Where administration was granted upon the estate of a living man, supposed to be dead, and a decree for the sale of the supposed decedent's land was made in a proceeding to which all the children and heirs-at-law were made parties and the death of the supposed decedent was alleged and admitted in the pleadings; *Held*, that the decree was void for want of jurisdiction as against both the supposed decedent and his heirs who were made parties to the proceeding and the latter are not estopped from attacking the decree in a collateral proceeding.

118—3

SPRINGER *v.* SHAVENDER.

PETITION TO REHEAR the case between the same parties decided at February Term, 1895, and reported in 116 N. C. Reports, at page 12.   The petition was as follows:

" The petitioner, the plaintiff in the above-entitled action, respectfully presents the fol'owing statement as a sufficient summary of the case, to illustrate what he humbly considers to be the erroneous ruling of the court.

*Summary of the Case.*

Some time in 1882, or shortly prior thereto, W. G. Jarvis, as the administrator of one George W. Dixon, instituted a special proceeding in the Superior Court of Beaufort county for the purpose of obtaining a license to sell the land of his intestate (it being the land in controversy) to pay the indebtedness of the estate.   In this proceeding all of the children and heirs-at-law of said George W. Dixon were made parties, and personal service of the summonses was made upon them.   The petition alleged that the said Dixon had died intestate and that letters of administration had been duly granted to the petitioner in said special proceeding.   It also alleged that the parties defendant to the proceeding were the children and heirs-at-law of said Dixon, that the personalty had been exhausted and that a sale of the land (described in the petition) was necessary to discharge the outstanding indebtedness of the estate.   The defendants (having been personally summoned as aforesaid) admitted the said allegations, and the court, after reciting the fact of personal service and *finding* " the facts alleged in the complaint to be true," decreed that the land be sold as prayed for.   At the said sale the land was purchased by R. C. Windley, and the sale being confirmed, a deed was executed to him by said administrator, on May 17th, 1882.   In 1886 the said Windley conveyed the land to your petitioner.   There is no suggestion that the pro-

ceeding and sale were not in all respects regular, nor is it pretended that the said Windley and your petitioner were not *bona fide* purchasers.

The defendants in this action claim the said land under a deed executed by the said children (heirs-at-law) and widow of the said Dixon, dated November 14th, 1887.

On the trial, it was held that the defendants could defeat the title of your petitioner by showing that, at the time of the said proceedings and decree, the said George W. Dixon was alive. Your petitioner insisted that the said decree could not be attacked by the defendants, privies in estate to the parties to said proceedings, who had admitted the jurisdictional facts ; and they also insisted that if said decree could be attacked at all, it could only be done by some direct proceeding, and not collaterally.

This Court affirmed the ruling of the trial judge, and your petitioner assigns the following reasons why the court should grant a rehearing :

*Assignment of Grounds for Rehearing.*

Your petitioner, being mindful of the principle that the Court will not reverse its decisions but upon the most weighty considerations, nevertheless respectfully and earnestly represents that a careful consideration of the facts of this case, and the authorities cited in the opinion, as well as many other authorities not adverted to, will clearly bring this case within that rule, of which every Court of final review gladly avails itself in order to correct errors and to prevent the consequent injustice to suitors. In the opinion of the Court it is stated that if it had appeared (from the record) that G. W. Dixon was alive, the want of jurisdiction could have been taken advantage of in any proceeding, collateral or otherwise. This proposition, your petitioner believes to be undoubtedly correct. But your

petitioner respectfully submits that the additional propo-
sition that " the same effect must be given to proof *aliunde*
after the decree is entered," and as against innocent pur-
chasers, is erroneous as applicable to all cases.   Even in
cases where a will has been probated in common form, or in
other *ex parte* proceedings, such .as the grant of letters of
administration, and in States where the land is sold upon
the petition of the administrator without making the heirs
parties, there is much diversity of authority as to whether
the want of jurisdiction can be shown *aliunde* in a collat-
eral proceeding ;  and it has been distinctly held in North
Carolina and many other States, that a payment to an ad-
ministrator whose appointment is a nullity will be upheld
by the Courts.   This was held in *London* v. *Railroad Co.*,
88 N. C., 584, cited in the opinion.   The trend of our decis-
ions is decidedly against a collateral attack as against per-
sons who have dealt with such an administrator.   Your
petitioner represents that, however this may be in such *ex
parte* proceedings it seems to be well settled by the con-
sensus of judicial decision, and by the text-writers, that
where the court, *as in this case, has obtained jurisdiction
of the parties,* it is its duty to pass upon the existence or
non-existence of jurisdictional facts, and that where this is
done and there is no reversal upon appeal, its findings are
conclusive and cannot be attacked by the parties even upon
a direct proceeding, much less collaterally.   Your peti-
tioner respectfully represents that, in citing Mr. Freeman's
Book of Monographs (Void Judicial Sales), the Court over-
looked the principle laid down by the learned author (pages
21 and 22), who uses the following language :
   " The duty of the court or judge is to investigate and
determine the truth of these jurisdictional allegations.
*   *   *   Whenever the jurisdiction of a court not of
record depends on a fact which it is required to ascertain

and settle by its decision, such decision, if the, court has jurisdiction of the parties, is conclusive and not subject to any collateral attack." Freeman Judgments, sec. 3523.

If this be true of a court not of record or of limited jurisdiction, how much stronger is the principle when applied to such a finding by a court of general jurisdiction, as is the superior court, through its clerk in the present instance? *Brittain* v. *Mull*, 91 N. C., 498.

This proposition of Mr. Freeman is conceded by all of the text-writers. Mr. Vanfleet, in his work on "Collateral Attack," p. 91, remarks: "All persons interested had an opportunity to appear and controvert the allegations in regard to the *death* and residence of the deceased, and the final order granting the relief prayed for necessarily concluded all persons."

To the same effect is 1 Herman "Estoppel," p. 364, who says: "Wherever the question of jurisdiction is one of fact, and is decided by the court whose proceedings are in question, the decision will be final, whether the question arises on a writ or error or in a collateral action."

Your petitioner further submits, that the case of *Johnson* v. *Beazley*, 27 Am. Rep., 285, cited in the opinion, must have been inadvertently cited by the Court, as the doctrine there laid down clearly sustains an *ex parte* probate from collateral attack, which is much further than it is necessary for your petitioner to maintain. In that case the defendant claimed under the deed of an administrator appointed by the probate court of the wrong county. It was held that the appointment could not be attacked collaterally. In the course of the opinion, the Court uses the following language, which strongly indicates the grave considerations of public policy which should govern the present case :

" Having a general jurisdiction over the subject matter,

and the law requiring the court to pass upon those questions, before granting letters of administration on his estate, it is to be conclusively presumed, in a collateral proceeding, that the court not only did so, but that it correctly passed upon them. To allow their heirs, or any one else, in a collateral proceeding to question the correctness of the judgment of the court, would so imperil the titles conveyed at administrators' sales of land that no prudent man would bid their value, and estates would be sacrificed. Both public policy and the weight of authority sustain the title which defendant acquired by his purchase at the administrator's sale; and as the instructions which the court gave the jury are in harmony with these views, and those asked by the plaintiffs and refused asserted the contrary doctrine, the judgment is affirmed."

When it is considered that this language is used in a case where the heirs had no notice of the grant of administration, it sustains, beyond all question, a sale made when the heirs were made parties and *admitted* the jurisdictional facts.

Your petitioner further represents that *in none of the cases* cited in the opinion were the heirs, or other contesting persons, parties to the proceeding under which the administration was granted or the land sold.

In the Texas cases, this Court overlooked the fact that in that state the heirs are not made parties upon a petition for a sale of land for assets. (*George* v. *Watson*, 19 Texas, 369. See, also, Freeman Monogram, 37.) Having, therefore, had no day in court, they were allowed to attack the grant of administration.

In the case of *Beckett* v. *Salener*, 7 Cal., 237, the heirs were made parties, but instead of *admitting* the jurisdictional facts, as they did in the present case, they *denied* the validity of the grant of letters of administration, and

it was held that they could do so.   The case, it is respect-
fully submitted, is not in point.

In *Griffith* v. *Frazier*, 8 Cranch., 1, the land was sold
under execution upon a judgment, which was revived
against an administrator whose appointment was void.
There was no notice or *scire facias* to the heirs, and they
were allowed to attack the administration.   This being
the first opportunity they had of contesting the adminis-
tration, they were therefore allowed to do so.

In *Duncan* v. *Stewart*, 25 Al., 408, the administrator of
one not dead sold personal property, and the administra-
tion was successfully attacked.

In *Melia* v. *Simmons*, 30 A. M. Rep., 746, it does not
appear that the heirs were parties.

In *Joehumsen* v. *Bank*, 3 Allen, 87, and *Thomas* v.
*People*, 107 Ill., 517, it was held that a payment by a
bank to the administrator of one living was not a dis-
charge.   This is not only inapplicable to the present case,
but is opposed to the North Carolina case of *London* v. *R.
R. Co.*, *supra*.

In *Morgan* v. *Dodge*, 44 N. H., 299, it was simply held
that the probate court had the power to revoke letters
where they had been granted without jurisdiction.

Your petitioner has thus briefly reviewed the cases cited
in the opinion for the purpose of showing that they have
no application where, as in this case, the court had
acquired jurisdiction of the parties and the jurisdictional
facts had not only been determined, but admitted by the
parties.   Your petitioner confidently, but respectfully,
submits that no authority can be found which authorizes
an attack, either direct or collateral, up n a decree ren-
dered under the circumstances of this case.   If the parties
had contested the jurisdictional fact of the death of Dixon,
and it had been tried before a jury and determined against

them, it is respectfully urged that neither they nor their privies could again litigate the matter, and especially by a collateral attack.    To permit this would destroy all confidence in administration sales, as in any action of ejectment a deed, made in pursuance of a decree of court having jurisdiction of the parties, could be attacked by simply showing by some witness that the alleged intestate was alive at the time of the decree.    If, as it must be conceded, such an attack would not be permitted after the jurisdictional fact had been tried and determined, the same conclusion must necessarily be followed where such jurisdictional fact is *admitted* by the parties.    Your petitioner admits that the proceedings could be impeached by Geo. W. Dixon, were he living; but as he is dead and the attack is made solely by parties and their privies who admitted the jurisdictional facts, it is earnestly insisted that as to them and their privies (Bigelow Estoppel, 75, Ed. 1876; *Miller* v. *Bumgardner*, 109, N. C., 412), the question of jurisdiction is *res adjudicata*, and cannot be disturbed.

Your petitioner further submits that the Court overlooked the case of *Doyle* v. *Brown*, 72 N. C., 393, which decides that jurisdiction cannot be collaterally attacked unless the infirmity appears upon the record.    Also to the same effect are the cases of *Edwards* v. *Moore*, 99 N. C., 1; *McGlawhorn* v. *Worthington*, 98 N. C., 199; *Harrison* v. *Hargrove*, 109 N. C., 346.

There is no finding that the heirs made the admission by inadvertence; and if they did, they must suffer and not the innocent purchaser.

Your petitioner avers that the judgment herein has been secured.

In view of the reasons above stated, your petitioner

respectfully prays that a rehearing of this cause be granted by the Court.

W. B. RODMAN,
*Attorney for Petitioner.*

*Messrs. Shepherd & Busbee, W. B. Rodman* and *J. H. Small,* for petitioners.

*Messrs. Chas. F. Warren* and *J. W. Hinsdale, contra.*

AVERY, J.: The basis of the application to rehear and reverse the former ruling of this Court (116 N. C., 12) is the contention that there was error in holding that the children of George W. Dixon were not concluded by the finding in the special proceeding, instituted by his administrator to sell the land in controversy, and to which said heirs were parties, that he was then dead, though it is now found by the jury that he was in fact alive when the administrator issued the summons and when the land was sold under the decree for assets. The question presented is whether the doctrine of estoppels applies to and binds the children, who since Dixon's death have brought suit to recover possession from those claiming through the purchaser at the sale, and it depends for its solution upon the answer to the preliminary question whether the judgment is in law utterly void or only voidable. The contention of the defendant rests upon the erroneous assumption that a judgment void for want of jurisdiction of the subject matter is *prima facie* conclusive on the parties and protected from collateral attack, as it is where the authority to deal with the subject matter is conceded and it is proposed to impeach the decree, because of an incorrect finding in the record that a party waived personal service by appearance or otherwise, submitted to the authority of the court. The fundamental and inherent difference between the two kinds of judgments grows out of the fact that the

right to be present in court and have an opportunity to defend an action, where it is proposed to adjudicate one's title to property, is a personal one, and a party may waive by acquiescence, or by neglect even, the requirement of the statute that notice or summons shall be actually served, or served in a specified manner or within a given time, while the authority of the court to take jurisdiction of the subject matter is derived from an express grant by the sovereign state in the Constitution and laws made in pursuance of it, and, like any other agent acting under a power, a judicial tribunal is not warranted in going beyond the limits of "the law of its creation" fairly construed. *Thomas* v. *The People*, 107 Ill., 517 ; *Melia* v. *Simmons*, 45 Wis., 334 ; *Scott* v. *McNeill*, 154 U. S., 34, 46. The law under which the jurisdiction of a clerk is exercised, is the provision of the Constitution (Art. IV., Sec. 12) which empowers the legislature to allot and distribute the jurisdiction conferred by the organic law amongst those courts inferior to the Supreme Court, and the statute ( *Code*, Sec. 1436) which in pursuance of the provision of the Constitution authorizes the institution of a special proceeding. " When the personal estate of a *decedent* is insufficient to pay all his debts ............ to sell the real property for the payment of the debts of such *decedent*. "

In discussing the contention that such judgments, as that rendered in the special proceeding, are liable to collateral attack, the Supreme Court of Texas gives its sanction to the principle upon which the former opinion in this case rests, as follows: " This (the rule that judgments cannot be collaterally impeached) cannot be universally true, because in the case of an administration upon the estate of a living man the court necessarily determines that the man is dead, and yet the man may be shown to have been alive at the time of the judgment, and

*in such case* although every step in the proceeding by which the man's estate is sold may have been *taken with the most perfect regularity*, and although the purchaser buys in good faith, *no title passes or can pass."* *Withers* v. *Jackson*, 27 Texas, 497. But the learned counsel for the petitioner intimated that the Court of Texas was out of line with the current of authority in holding such decrees void for want of power in the court to pronounce them, without actually acquiring jurisdiction over the subject matter in the manner prescribed by law. It would seem therefore but proper that somewhat extended quotations. and numerous citations should be made to show that the contention is not well founded.

" Jurisdiction," said the Supreme Court of Illinois in *Thomas* v. *People*, *supra*, " in the general and most appropriate sense of that term, as applied to the subject matter of a suit, is always *conferred by law*, and it is a fatal error to suppose the power to decide in any case rests solely upon the averments of a pleading." Quoting from *Melia* v. *Simmons*, 45 Wis., 334, the Court said of the appeal before it : " If this case falls within any class of cases, it is a class in which no court has any right to deliberate or render any judgment, and in which every *conceivable act is an absolute nullity.* The only jurisdiction the county court has in respect to the administration of estates, is. over the estates of *dead* persons. It would seem that the bare statement of such a proposition is enough without citing authority."

In enumerating the classes of cases in which decrees of probate courts are utterly void, and those where the court has jurisdiction of the subject matter, but by some mistake issues letters testamentary irregularly or illegally, the Court of New Hampshire classified our case among those void for want of jurisdiction. " So," said the Court,.

" where a will is proved or letters are granted, when the person supposed to be dead is still living, the powers of the courts being limited to the estates of *deceased* persons. *Morgan* v. *Dodge*, 44 N. H., 259. An examination of the authorities cited in *Scott* v. *McLean*, 154 U. S., at p. 47, to sustain the proposition that where a probate court adjudges that a man is dead when he is alive, the judgment is invalid, shows that in the following cases such a decree was held to be " *absolutely void for all purposes and ab initio.*" *Melia* v. *Simmons*, *supra ; Thomas* v. *People*, *supra ; Stevenson* v. *Superior Court*, 62 Cal., 60 ; *D'Arnsment* v. *Jones*, 4 Lea (Tenn.), 251 ; *Perry* v. *St. Joseph R. Co.*, 49 Kan., 420.

In the case of *Scott* v. *McLean*, *supra*, the only question presented was whether the alleged intestate was bound by the probate proceeding to which his heirs were parties, and in which the court had found that he was dead, when he appeared in person before the court, and of course it was only adjudged that he was not estopped from denying the title of the purchaser under a decree to sell his lands for assets. But on page 43 the Court said : " The *absolute nullity* of administration granted upon the estate of a living person has been directly adjudged or distinctly recognized in the courts of many other States." The second authority cited in support of the proposition was *State* v. *White*, 7 Ired., 116, where the obligor on a bond executed as administrator of an alleged intestate, not the intestate himself, was allowed to impeach the grant of letters collaterally. The Court, after citing an array of authorities, call attention (as did this Court in the former opinion) to the fact that the case cited in the petition from 63 N. Y., 460, is not sustained by authority elsewhere, was seriously criticized by Chief Justice REDFIELD, and subsequently

explained by the Court which rendered it, as governed by a statute somewhat peculiar in its terms.

No man can put himself in the place of the sovereign and make the adjudication of a court valid by ratifying an unauthorized exercise of power by its agent when the law of the land, which is the agent's power of attorney,. declares that the court has no authority to render the judgment. It was upon this principle that this Court, in *State* v. *White, supra,* allowed the obligor upon the plea of the general issue to show that the alleged intestate of the plaintiff to whom letters of administration had been issued was alive when the letters were granted. If he was. alive the subject matter was wanting and there was no jurisdiction in the probate court. This Court may be supposed to have known that the facts in *London* v. *Railroad* were not such as to make it direct authority to support this principle, but it is authority to show that the Court there (88 N. C., pp. 588, 589,) cited *State* v. *White, supra,*. with approval, and distinguished *London* v. *Railroad* from it, as subsequently the same principle was adverted to in *Garrison* v. *Cox* and other cases cited for the purpose of distinguishing them and not in support of the opinion.. After citing *State* v. *White,* with approval (p. 89), the Court said: " If the person on whose estate the court undertakes to grant letters testamentary or of administration *be dead,* and at the time of his decease have his domicile or have *bona notabilia* to be administered, it matters not how irregular may be the proceedings of the court, or how obscured and incomprehensible its conclusions, they afford sufficient authority to cover the *bona fide* transaction of its appointees." The Court thus clearly sustained the doctrine already stated, that irregularities in appointing administrators would not invalidate their acts where it appeared that there *was a dead man,* and jurisdiction

consequently of the subject matter—his estate—and, on the other hand, by citing, with approval, *State* v. *White* to sustain the proposition, that whenever it appeared, even by way of collateral attack, there was no *dead man*, the jurisdiction would be declared defeated and the decree treated as void.

Upon examination it will be found that this distinction has been followed by all text writers and all the appellate ·courts of this country that have had occasion to discuss the subject, with the single exception of the Court of New York, which rests its ruling, as has been stated, upon the peculiar provisions of *The Code* of that State.

This Court, in *Collins* v. *Turner*, N. C. Term Rep., 105,. (54) sustained the principle, upon which the decision in this· case rests, by holding that the grant of letters of administration on the other hand in a county where the court had no jurisdiction of the subject matter, was utterly void and might be attacked collaterally, thus marking the distinction between that and the case where, dealing by proper authority with the subject matter, the court has inadvertently deprived the lawful claimant of the administration. In the early case of *French* v. *Frazier*, 7 J. J. Marshall (Ky.), 425, the Court, upon the principle that an administration upon the estate of a person then alive was void for all purposes and could be impeached collaterally, held, as did this Court in *State* v. *White, supra*, that a debtor of the alleged decedent could set up the plea that the plaintiff was not administrator.

The distinction which seems to have been overlooked by the petitioner in this case is that, while none but parties are bound by a decree, and while the want of actual service may be waived, a judgment, where there is want of jurisdiction of the subject matter, is void as to all persons, ·and consent of parties can never impart to it the vitality

which a valid judgment derives from the sovereign state, the court being constituted by express provision of law its agent to pronounce its decrees in controversies between its people.  *State* v. *White, supra.*

It seems needless to pile up other authorities to sustain the proposition, that where a court rests its right to jurs- diction of the subject matter upon a grant of power to deal with the estates *of dead men*, its decrees are absolutely void when the administration is by mistake upon the effects of *a living* person.   Yet it is respectful to notice and follow the line of the argument on behalf of the peti- tioner, and to discuss the leading authority relied upon to support his contention.   The Supreme Court of Washing- ton rested its decision in *Scott* v. *McNeill*, upon the New York case, cited for the petitioner, but the Supreme Court of the United States on appeal pronounced it, as we have stated, insufficient authority.  The Court of Washington also held that the judgment was good even against the alleged intestate on his re-appearance, on the ground that the probate court was required to find that a person was dead before the grant of letters, and the proceeding was therefore in effect one *in rem*, but this reason was also declared wholly insufficient.   The Court in *Scott* v. *McNeill* laid down the proposition (p. 46) that "to give such proceeding any validity there must be a tribunal com- petent by its constitution—that is, by the law of its crea- tion—to pass upon the subject matter of the suit."   The Court go on to say (p. 47) that the death of the owner of an estate is "a *fundamental* prerequisite to the exercise by the probate court of jurisdiction to grant letters testa- mentary or of administration upon his estate, or to license any one to sell his land for the payment of his debts."   If the death was a fundamental prerequisite to the exercise of jurisdiction, it was because, until the death occurred,

there was no subject matter.    If there was no jurisdiction for the want of authority over the subject matter, the decree was void, and consent or acquiescence in the decree could not impart vitality to it, so as to estop any one. Grant that the precise application of the governing principle had never been made before the decision of this case, still, if a court cannot render a valid judgment without jurisdiction of. the subject matter of the action, and nothing but a valid judgment will operate as an estoppel upon any one, it would seem that this Court might safely rest its opinion upon principle without waiting to find a precedent.    It is preferable always to rely rather upon a substantial reason or a fundamental principle, than upon an ill-considered precedent, but in fact the research of counsel has not enabled them to find a single authority in conflict with the opinion which they ask the Court to modify.

The reasoning of the petition rests upon the idea that the same rule as to the binding effect of judgments is applicable where there is a defective service on some of the persons interested, as where there is a want of jurisdiction of the subject matter ; and the petition is based upon a false construction of section 364 of 1 Herman on Estoppels, where the author is treating the question of personal service.    In the succeeding section (365) the same writer explains that where there is no service at all, the judgment is void and subject to collateral attack, but "if the court to which the process is returnable adjudges the service to be sufficient and renders judgment thereon, such judgment *is not void* but only subject to be set aside by the court which gave it, upon reasonable and proper application or reversed upon appeal."    " The rule, therefore, deducible from the authorities (says the same author in the section referred to) may be thus stated :    *Where jurisdic-*

*tion is acquired* no irregularity in the mode of exercising it can affect the judgment, when collaterally attacked," &c. The foregoing quotation shows as plainly as it is possible to prove it that the author relied upon to sustain the petition to rehear was in the very section cited, discussing a finding by a court, not that it had jurisdiction of the subject matter, and not even that it had jurisdiction of the persons of the parties when no service at all had been made, but a finding where the service was only apparently irregular, that there had been in fact no defect.

But the section relied upon is authority for the position that a void judgment is not protected from collateral attack and works no estoppel even on a party to the proceeding in which it purports to have been rendered. The same author (1 Herman, Section 364) says that the necessary elements of a good plea of *res adjudicata* are not only that there should have been a final judgment between the same parties for the same cause of action, but " the principal element is that it must be a valid judgment. That is, it must be rendered by a court legally constituted, having jurisdiction of *the cause and the person.* Without jurisdiction there is no *validity* or *vitality to the judgment.* In order to give *validity* to a judgment of a court there must be jurisdiction of the cause and of the person."

The question here is whether the judgment operated as an estoppel upon the heirs because of the declaration and finding of the court that their ancestor was dead when he was in fact alive, and because they did not appeal from that finding and have it reversed or institute a direct proceeding to set it aside. The author relied upon, as appears from citations already made, declares that such findings are conclusive as to the fact of service, when collaterally attacked, not where there was no service and no jurisdiction of the person at all. Of course the inference

118—4

would be, if nothing further appeared, that no such finding
could give jurisdiction of the subject matter because it set
forth that a live man was dead any more than would the
finding that service had been had on a party, when no
process had been issued against him. But Herman does
not leave us to conjecture or to determine by reasoning
upon principle what are his views upon this subject. In
section 65 he says: "*Jurisdiction is given by law* and can-
not be conferred by *consent* of the parties; but a privilege
defeating jurisdiction may be *waived* if the court has juris-
diction over the subject matter. Jurisdiction must either
be of the cause, which is *acquired by exercising powers con-
ferred by law over property within the territorial limits of
the sovereignty* or of the person, which is acquired by
actual service of process or *personal* service of defendant."
This is the well-established doctrine, that a person may
waive the right to demand personal service of process on
him, because it is a question affecting only his personal
rights, and the adjudication of a court that there was no
irregularity in service is deemed, *prima facie* only, to be
correct.

In stating what is essential in order to give conclusive
effect to a judgment, Bigelow in his work on Estoppel,
p. 57, says: "In the next place the judgment must have
been *valid.* If for want of jurisdiction or for any other
reason it was void, it will have no effect, though it was
otherwise as we shall see, if it was only voidable," (citing
the opinion of Judge COOLEY in *Nixon* v. *Stevens,* 17 Mich.,
518.) "It is necessary that both the person of the defend-
ant and the subject matter of the suit should be fully
within the cognizance of the court either at the beginning
or in the course of the action." As illustrating the prin-
ciple that only valid judgments work an estoppel, the
author cites two leading cases from the courts of New

SPRINGER *v.* SHAVENDER.

Jersey. In the first of these (*School Trustees* v. *Stocker*, 13 N. J., 116) the Court laid down the principle that jurisdiction over the subject matter of a suit " cannot be conferred by consent, nor can the right to object to a want of it be lost by acquiescence or neglect." The Court said : " If the question were one merely of jurisdiction as to a party defendant not properly brought into court for want of process or for defective service of it, the objection would be well taken. This kind of jurisdiction may be obtained by consent, or the want of it may be waived by consent or failing to take advantage of it at the proper time. But in the case before us the difficulty lies much deeper. The question here is not whether a competent court had obtained jurisdiction of a *party triable before it,* but whether the *court itself is competent* under any circumstances to adjudicate a claim against the defendant below." Another authority cited by the author was *Dodd* v. *Una,* 40 N. J. Eq., 672, where the Court held that a petitioner or one who concurred in the prayer of the petitioners in an equitable proceeding and who not only acquiesced in but prayed for and invited the action of the court, was not precluded from questioning its jurisdiction to render a decree. The Court in that case cited as the most " concise and complete definition of jurisdiction, that of Chief Justice BEASLEY in *Munday* v. *Vail,* 5 Vroom, 422, who defined it to be, " The right to adjudicate concerning the subject matter in a given case."

If it were necessary numberless authorities might be added in support of the propositions : 1. That a judgment is void, not voidable, if the court has no jurisdiction of the subject matter of the action. 2. That where a judgment is invalid for want of jurisdiction of the very subject matter, its authority over which must be derived from a grant from the sovereign State, the assent or the neglect of a

person cannot confer on it the power which the State has
failed to vest in it, though a person may thus waive the
assertion of his rights of a purely personal nature.    3.
That a judgment void for want of jurisdiction  of the sub-
ject matter cannot conclude any person, whether a party or
stranger to the proceeding.    This position is sustained by
the authorities cited by Bigelow  and referred to above, if
it be necessary to cite  additional authority to  prove that
there is no estoppel without jurisdiction, and that no indi-
vidual can exercise the power  of the government to  give
jurisdiction where the law does not confer it, and  thereby
estop himself, when every other person is left at liberty to
plead in avoidance the want of authority in the court.

Upon the former hearing, as upon the rehearing, the con-
clusion of the court rests upon  the two plain propositions,
that the judgment in the  special  proceeding was  void for
want of power in the court  to  exercise  jurisdiction over
the estate of a live man, and  the  deduction from it  that,
being void, it worked no estoppel.

If additional reasons are  necessary to  sustain the  opin-
ion on the former hearing,  the  acknowledged  test of  the
conclusiveness of a decree upon a party in such cases, may
be applied, and would be involved in the question whether
the purchaser, through  whom  the plaintiff claims, and,  by
reason of his privity with whom,  he insists that the  heirs
of Dixon and  their  assignees  are  concluded,  would have
been estopped by the finding from  paying the  amount of
his bid (30 dollars) had he discovered before payment that
Dixon was alive.    Estoppels must be mutual, and in order
to operate mutually in this  case, the  decree  must have
been conclusive, as to the very finding  insisted upon, both
on Windley the purchaser and  the  heirs of Dixon.    This
is an action for possession, in which the question  whether
the purchase money paid by Windley shall  be restored is

not raised, and cannot be considered.   The heirs of Dixon, who were *sui juris*, might have waived personal service and given the court jurisdiction of their persons, but they could no more impart the vitality, which is essential to the operation of the doctrine of estoppel, to a judgment rendered against a live man under authority applicable only to *decedents*, than they could confer any other author-ity which the Constitution empowers the legislature " to allot and distribute " among other courts prescribed in the Constitution, or which may be established by law.   Const., Art. 4, Sec. 12.

If it had appeared upon the record that George W. Dixon was alive when the special proceeding was insti-tuted and when the decree of sale was granted, the judg-ment would have been pronounced a nullity without proof *aliunde* that he was not dead.   There is no sufficient reason to adopt the suggestion of the petitioner and modify the proposition to this effect in the former opinion of the Court.

The Petition is Dismissed.

CLARK, J. (dissenting):   As to the person erroneously supposed to be deceased, the leave granted to sell his real estate to make assets is necessarily a nullity.   He was not a party to the proceeding nor in privity and can in no wise be bound by the judgment. *As against him* the judg-ment is a nullity, the Court is careful to emphasize in *Scott* v. *McNeill*, 154 U. S., 34, 46, and I find no case that goes beyond that.   The clerk has general jurisdiction of the subject matter of winding up dead men's estates, and his finding of fact in a particular case that a man is dead, is binding and conclusive on all parties to that judgment, when unappealed from and unreversed.   The parties do not give jurisdiction by consent, but the judicial finding

by a court having jurisdiction to make it, that a man is or is not dead, is just like any other finding by a court having jurisdiction of any given class of cases, conclusive as to all who are parties to the action, and persons buying at a sale under such judgment have the right to be protected from any claim in opposition to the tenor of the judgment by those who were parties to that action.  The finding of the court may be incorrect·as to the facts, and its rulings erroneous in law, but both as to the law and the facts the decision of the court, having general jurisdiction of such subject matter, is conclusive on the parties.   These defendants were content with the court's adjudication that their ancestor was dead, they did not appeal therefrom, they were benefited to the extent of the purchase money paid by these plaintiffs, and it does not lie in their mouths now to say that such adjudication is incorrect either as to the law or the facts.   If a man stands by at an execution or mortgage sale of property, sold as another's, and by his words and conduct makes no claim, but permits the purchasers to pay the purchase money, he is estopped afterwards to claim such property as his own.   For a stronger reason, are these defendants estopped, who not only acquiesced in the findings of fact and conclusions of law in ordering a sale of this land but who were benefited by the application of the purchase money.

The decree divested no interest in nor title to the land possessed by the ancestor who was erroneously supposed to be dead.   But it should estop the plaintiffs ever thereafter to claim as against the purchaser under the decree, any interest in land which had been adjudicated, (they being parties) to belong to them subject only to their ancestor's debts.   I have found no case anywhere which will controvert this proposition.   Many cases use the general expression that such judgments are nullities, but

when examined it will be seen that they are held nullities as against the ancestor, who not being a party to the judgment, could not be bound by it.

The general jurisdiction of this class of cases rested in the court making the decree of sale in this case.   Its adjudication of the fact that the ancestor of the plaintiffs was dead was one it had legal authority to make, and must pass upon in all such cases, and its decision upon that fact, like any other decision either upon the facts or the law, unappealed from, is conclusive as to such fact or ruling, as to all parties to the action.   If judgments of the courts upon matters within their general jurisdiction do not bind even the parties thereto, but can be upset at any time thereafter by showing by other witnesses that the facts were otherwise, then the stability of judgments and the reliance to be placed in titles acquired under them, will be rudely shaken.   The death of some witnesses or the failing memory of others will become sufficient, even as to parties to the action, to set aside all judgments based upon the finding of the courts upon the fundamental facts which justify the assumption of jurisdiction in any given case.