Nash, J.
 

 The first exception is that there was no legal evidence that Dr. Scott had removed to Tennessee. The master has made no specific report upon this enquiry, and, if he intended so to do, it is to he gathered from the report on the subject of the administration granted in Tennessee. If his intention was so to report, on that-point, the exception is sustained, for both the reasons as
 
 *192
 
 signed in the exception. There is no evidence that such was the fact and it is contradicted by the answer. Upon this subject the testimony of Mr. Stirwalt is decisive. He states that when Dr. Scott started for Tennessee, he declared he was going to Tennessee to look about, and,
 
 if pleased with the country,
 
 intended to stay or make a permament location there, and took with him eight or ten valuable negi’oes. His family continued to Jive on and cultivate the same place, where Dr. Scott had lived for many years, and continued thereuntil the fall of 183&. Dr. Scott went to Tennessee in 1837 and died in October. 1838. The defendant in his answer states, that, at the time Dr. Scott died, he was making preparation to remove to Tennessee. Here then we have the declaration of Dr. Scott, that his going to Tennessee was not a removal there, but an exploratory trip, preparatory to a removal if he liked the country, and we have the admission of the defendant, that he was making preparation to remove at the time he died. To remove is to change one’s domicil or place of permanent residence. Dr. Scott had not changed his domicil at the time of his death. When he went to Tennessee, in addition to his own declaration, we have the fact that his wife and family and a largo portion of his property was left in North Carolina, where it remained until after his death. North Carolina was the domicil of origin to Dr. Scott, and must so remain, until he acquired another. The acquisition of a new domicil does not depend simply upon the residence of the party; the fact of residence must be accompanied by an intention of permanently residing in the new domicil, and of abandoning the former, in other words the change of domicil must be mode manifest,
 
 animo et facto,
 
 by the fact of reside,nee and the intention to abandon.
 
 De Bonneval
 
 v.
 
 De Bonneval,
 
 6 Eng. E. Rep. 502, 1 Curties 856,
 
 Craigie
 
 v.
 
 Lewin,
 
 7 Eng. E. Rep. 460, 3 Curties 435. Sir Hesserd Jesmer Trust, in the latter case says, the
 
 *193
 
 result of all the eases is, that there must be the
 
 animus el
 
 factum, and that the principle is, that a domicil once acquired, remains until another is acquired, or the first abandoned; and that the length of residence is not important,provided the
 
 animus
 
 be there; if a person goes from, one ocuntry to another with the
 
 intention
 
 of remaining that is sufficient, and whatever time he may have lived there is
 
 not
 
 enough, unless there be an intention of remaining. Again in the case of
 
 De Bonneval
 
 the same Judge lays down this principle “ the presumption of law being that the domicil of origin subsists until a change of domicil is proved, the
 
 onus
 
 of proving the change is on the party alleging it, and the
 
 onus
 
 is not discharged by merely proving residence in another place, which is not inconsistent with an intention to return to the original domicil. Apply these principles to the case before us. Dr. Scott’,? domicil of origin was North Carolina; what evidence does the defendant, who insists he had changed it, produce ? Not a particle, except the fact that he had resided in Tennessee a year before his death. Where is the
 
 proof
 
 of his intention to make that his permanent place of residence
 
 1
 
 There is none whatever. There is no proof of making' any preparation to remove his family. We have seen, that the duration of the residence is nothing, unless the
 
 animus non revcrtencli
 
 accompanies it, and that it did not, the continuance of his family at the former domicil is strong evidence. There was not the
 
 animus et
 
 factum. We are of opinion then that Dr. Scott at the time of his death had not acquired a domicil in Tennessee, but that it was still in North Carolina.
 

 The second exception is to that part of the master’s report, in which he states that there is no evidence that the defendant sent any property to Tennessee. This exception is allowed. The answer states, that after the death of Dr, Scott, his wife being desirous to go to Tennessee
 
 *194
 
 the defendant was willing, that the other property mentioned in the deed of trust should be removed, and it was so accordingly removed, there being, at that time, an administrator regularly appointed in that State, to wit, Mr.Wm. Treat, “
 
 to whom all said property was consigned by the defendant.”
 
 We think this
 
 is
 
 an admission, that he did send the property to Tennessee.
 

 The third exception is sustained. It is founded, as we understand it, upon the principle, that the domicil of Dr. Scott, at the time of his death, being in Rowan County, in this State, the letters of administration granted to the defendant by the Court of that County, was the primary administration, and that granted in Tennessee was ancillary ; and that it was therefore the duty of the defendant to have collected the assets of the estate, though they were in Tennessee. It is well settled, that an administrator appointed in one State, cannot sustain an action, brought in his representative character, in another. 1 Hagg. 355 Conference Rep. 68.
 
 Morrell
 
 v.
 
 Dickey, 1
 
 John. Ch. R. 186. 1 Cranch 259.
 
 Governor
 
 v.
 
 Williams,
 
 3 Ire. 154.
 
 Raymond
 
 v.
 
 Wattsville, 2
 
 Lee’s E. R. 551. But in this case a number of negroes, belonging to Dr. Scott, were in the actual possession of the defendant, and were
 
 sent
 
 by bim to the administrator in Tennessee. At the time of the death of Dr. Seott, those negroes were in this State, and were of course assets, and as such, belonged to his personal representatives in this State,
 
 McBryde
 
 v.
 
 Choate, 2
 
 Ired. Eq. 613, and for them only can an administrator be made answerable.
 
 Governor v. Williams, ubi supra.
 
 And though it be true, that the defendant did not administer on the estate of Dr. Scott, until after he had sent the negroes to Tennessee, yet the moment he did take out letters of administration, they related and made him responsible for all the assets which had been in his possession or what he might have reduced to
 
 *195
 
 possession at the death of his intestate.
 
 Whit
 
 v.
 
 Ray,
 
 4 Ire. 14. The defendant might have declared upon his possession and maintained an action against any one, who detained them from him, either in this State or elsewhere, and this was the charge against the defendant because he had the legal title under the deed of trust. We think the defendant is justly chargeable with the value of the negroes and other property sent by him to Tennessee, aud this exception must be sustained.
 

 The report is set aside, and the case is referred back to the master, with the instructions formerly given, and in conformity with the principles now declared, unless the defendant admits the property sent to Tennessee was sufficient to pay the plaintiff's demands.
 

 Pee Curiam.
 

 Ordered accordingly.