Nash, J.
 

 This was an issue of
 
 devisavit vel non
 
 to try the validity of a paper writing, purporting to be the last will and testament of Joel Horne,- deceased.
 

 Three objections were made by the defendants, the' caveators. First, that the deceased had not mental capacity. Secondly, if he had, his mind was so weak that he was easily influenced, and executed the paper under' influence and through fraud and circumvention : And thirdly, that the supposed testator was, at the time he executed the paper, a citizen of South Carolina, and had' his domicil there, and that the paper writing was witnessed by only two subscribing witnesses, whereas by the laws of that State, three were necessary.
 

 The defendants’ counsel then requested the Court to charge the jury, that if the supposed testator was so deficient in memory, as not to remember who his relations were, as appeared must be the case, from his speaking but a few days before,, of giving them- his property, and now not mentioning them at all, he was incapable of making a will. The Court refused so to charge, but told the jury, that if he understood what he was doing when he made the will, so as to know that he was giving his. property to the plaintiffs, he had such a sound and dis* posing mind as would enable him, in law, to make a will.
 

 In his charge-, the presiding. Judge went fully into the evidence, upon each question raised in the causey.and &
 
 *106
 
 was fairly left to the jury. Upon the questions of law, embraced in the first and second objections, although his Honor might have been more explicit, we think he was sufficiently so, and that the charge, in those particulars, was substantially correct. As to the mental capacity of Joel Horne, his language is, “that if the supposed testator knew what he was doing, at the time of making the said supposed will, and that he was giving his property to the plaintiffs, and that they would be entitled to it, provided the forms of the law were complied with, they should find in favor of the will.” We do not see that the defendants have any right to complain of what is here laid down. If the deceased had the portion of mental capacity, here required, he had such a mind and memory, as the law required, to enable him to dispose of his property by will. As to undue influence, or the papers being obtained from the deceased by fraud and imposition, there was no evidence whatever to sustain the objection and his Honor ought so to have informed the jury.
 

 The instruction, asked for by the counsel of the defendants, was not such as the Court could give. It required the Judge to pronounce an opinion upon a matter of fact —to-wit: “that a few days before making his will, the deceased spoke of giving his property to his relations, and now not mentioning them at all.” Whether he had so spoken was a fact, to which the jury alone could respond. We think, therefore, the instruction was properly refused. Where instructions are prayed, if granted, they must be put as the counsel requires, otherwise they are not what he demanded.
 

 We concur with his Honor in his instructions to the jury, upon the third objection. It is unquestionably true, that if Joel Horne was, at the time the paper writing was executed, still domiciliated in South Carolina, it would not be a good will in North Carolina. For it had pot the requisite number of witnesses, there being'but
 
 *107
 
 two and the laws of South Carolina requiring three. It was important then to ascertain whether, under the circumstances detailed by the witnesses, the deceased had acquired a domicil in this State, and thereby lost that of origin. On the part of the plaintiffs it was contended, such was the fact, and on that of the defendants that the origin of birth still continued. After stating to the jury the facts bearing on this point, the Court left the intent, with which Joel Horne had come to this State, as a matter of fact for their inquiry. Upon the law he instructed them, that South Carolina, being the domicil of origin to the deceased, it continued so until he had acquired another; it could not be lost until then. And, to enable them to come to a proper conclusion, he instructed them, that if the deceased had left South Caroliua and cometo this State with a view to a temporary purpose, and with the intent, when that purpose was served, to return to his native State, he had acquired no domicil here, but if he had come to this State with the intent to live permanently in it, he had acquired a domicil here, and lost it in South Carolina, and the will was executed with the forms entitling it to probate here. To this charge we see no just exception. The domicil of a testator must govern the form, in which a will is executed.
 

 The term domicil, in its ordinary and familiar use, means the place where a person lives, or has his home ; in a large sense, it is where he has his true, fixed, and permanent home, to which, when absent from it, he intends to return, and from which he has no present purpose to remove. Two things, then, must concur to constitute a domicil — first, residence, and second, the intention to make it a home — the fact and the intent. In this case Joel Horne had a domicil in South Carolina — a domicil of origin, which continued up to a short period before his death, and up to that time, unless he had lost it, by acquiring a new one in this State. This was the
 
 *108
 
 point to be decided by the jury, and to it their attention was drawn by the Court. There was one circumstance, which, we think, was nearly conclusive upon the question — it is, that the deceased himself considered North Carolina his domicil. In his will he styles himself “Joel Horne,of Anson County, North Carolina.” The law governing the question was plainly and correctly stated to .them. The plaintiffs relied much upon the fact, that, at the time the deceased executed the paper writing, his residence was in North Carolina. They were instructed that residence did not constitute a domicil, though it was
 
 prima facie
 
 evidence of it; thus guarding them from a mistake, as to that fact. In concluding his charge upon the question of domicil, his Honor instructed the jury, “if the deceased had come to Anson County in this State, for the purpose of settling there permanently or for an indefinite time, his domicil would be there,
 
 although prevented from doing so by death.”
 
 There is some confusion in the latter clause. It is obvious however, from the context of the whole sentence, his Honor did not mean, if he had been prevented by death from reaching this State ; if he had died in
 
 transitu.
 
 In that case his domicil of origin would still have continued, for he would not have acquired a new one, and he had already told the jury that a domicil could not be lost until another was acquired. And in the same sentence, he had stated to them, if the deceased had abandoned his home in South Carolina and
 
 had come to
 
 Anson, &c. We presume the intention of the charge in this part was to instruct the jury, that the length of time, during which the deceased enjoyed his new home, was not material to the question of the new acquisition, In this view, the charge was correct. Residence for however long a time it may be continued, cannot constitute a domicil, without the intention of permanently making it a home, nor can the shortness of time, in which the pew home is enjoyed, defeat the acquisition when ac
 
 *109
 
 companied with the intention, for in the latter there would be the
 
 factum, et animus.
 
 These views are sustained by the cases of
 
 De Bonneville and Be Bonneville,
 
 6 Eng. Eq. Rep. 502.
 
 Craige and Lewin,
 
 7th Do., 560.
 
 Plummer and Brandon,
 
 5th Ire. Eq. 190, and
 
 Story's
 
 conflict of laws, ch. 3.
 

 Per Curiam. Judgment affirmed.