J. R. REYNOLDS, ADMINISTRATOR v. LLOYD COTTON MILLS.

(Filed 14 May, 1919.)

1. **Domicile—Executors and Administrators—Intent—Change of Residence—Clerks of Court—Statutes—Burden of Proof.**

   In order to effect a change of "domicile," as distinguished from "residence" or "inhabitancy," within the intent and meaning of our statute giving jurisdiction to the clerk of the court in issuing letters testamentary or of administration, Rev., sec. 16 (3), the intent of the deceased, though he may have left his domicile for the purpose of making the change, and the physical change of residence by him, are both necessary, the one without the other being insufficient, the law being that, though he may have formed the intention to change his domicile, if there is no actual change of residence his domicile remains at his former home, the burden of proof being on the person applying to the clerk for letters to show the jurisdictional fact; but where both the elements are shown, the length of residence in the new place prior to the death of the deceased is not material.

2. **Domicile—Clerks of Court—Executors and Administrators—Judgments—Actions—Collateral Attack.**

   The right of the clerk of the Superior Court to issue letters testamentary or of administration is made by our statute, Rev., sec. 16 (2), to depend upon the domicile of the deceased within the county, and being jurisdictional, the validity of letters issued by him may be collaterally attacked, by a proper party in interest or in a direct proceeding, depending upon the state of the record in each particular case and the special question involved.

3. **Same—Record.**

   Where the record in proceedings to obtain letters testamentary or of administration on its face, by presumption of law or a recital of facts, shows the proper domicile, the judgment of the clerk of the court granting them may only be attacked for lack of jurisdiction in direct proceedings, recitals therein that the deceased, late of a certain county, is dead, intestate, being sufficient; but it is otherwise if the lack of jurisdiction so appears, for then the judgment may be attacked collaterally.

4. **Domicile—Clerks of Court—Executors and Administrators—Judgments—Parties in Interest—Actions.**

   Where one claiming to be administrator brings an action, as such, to recover damages for the negligent killing of his intestate, the defendant is a party in interest, who may attack the validity of the proceedings wherein the administrator was appointed, upon the ground that the domicile of the intestate was not in that county, and that the clerk therefore lacked jurisdiction in the matter, Rev., sec. 16 (3), and this may be done in a direct proceeding, as was done in this case, or collaterally, as may be proper, in the particular case.

5. **Domicile—Clerks of Court—Executors and Administrators—Subsequent Appointment—Admissions.**

   Where letters of administration have been granted in one county and thereafter the administrator takes out letters in another and the proper

county for the purposes of the suit, to which he has been made a party at his request, his having done so has somewhat the appearance of an admission that the prior letters were void, but this is not conclusive upon him. This is said *arguendo.*

6. **Limitation of Actions—Executors and Administrators—Void Appointment—Clerks of Court—Jurisdiction—Actions—Parties.**

Where one has attempted to qualify as administrator under letters issued by the clerk of the Superior Court of a county having no jurisdiction, and brings his action within the time prescribed, and thereafter has qualified in the proper county and applied to the court for permission to become a party to the pending action, to recover damages for the negligent killing of his intestate, the two years within which the action may be brought under our statute having expired at the time of his application to become a party, it is error for the court to permit him to become a party, for the former proceedings could not be maintained under a void qualification as administrator, and the course taken subsequently cannot have the effect of reviving them, as the requirement that the action for the death shall be brought within two years thereafter is a condition precedent annexed to the cause of action, and its prosecution, and not a statute of limitations.

PETITION to vacate letters of administration, heard before *Webb, J.,* in December, 1918, at Chambers.

The facts, as agreed upon, are that James Scism was, prior to 3 June, 1917, domiciled in the county of Gaston, and on that date he with his family was riding in an automobile from said county to the county of Lincoln, in which latter place he intended to make his home, having previously contracted to work for the Lloyd Cotton Mills. He had sent his household and kitchen furniture forward before he started on his journey, and it had arrived in Lincoln County. While he was proceeding from his home in Gaston County to the county of Lincoln, the automobile in which he was riding was overturned before he reached the line dividing the two counties, and he was killed in Gaston County. The case does not show that he had selected a house or place of abode in Lincoln County, where he intended to live, but only that he left his domicile in Gaston County with the intention of residing thereafter in Lincoln County.

On application of J. R. Reynolds to the clerk of the Superior Court, administration upon the estate of James Scism was granted to him, and letters accordingly issued, and he thereupon commenced an action in the Superior Court of Lincoln County to recover damages of the Lloyd Cotton Mills for alleged negligence of its servant in upsetting the automobile and killing his intestate.

The Lloyd Cotton Mills moved before the clerk to set aside the letters of administration, or withdraw them, upon the ground that they were improvidently issued, the court having no jurisdiction of the matter as

James Scism, at the time of his death, was domiciled in Gaston County, and not in Lincoln County, and that, under our statute, the clerk of the Superior Court of Gaston County had sole and exclusive jurisdiction thereof. On hearing the motion, the clerk held, upon the facts above stated, that he had no jurisdiction to issue the letters, and ordered the same to be revoked, whereupon the said J. R. Reynolds appealed, and the judge of the Superior Court reversed the decision of the clerk, and ordered the letters to be restored. The petitioner, Lloyd Cotton Mills, duly excepted to this order of the judge.

More than one year after the death of James Scism the said J. R. Reynolds applied to the clerk of the Superior Court of Gaston County for letters of administration upon the estate of James Scism, and they were granted to him, and the judge of the Superior Court of Lincoln County, on application of J. R. Reynolds, as administrator under the letters issued by the clerk of Gaston Superior Court, ordered him to be made a party to the action against the Lloyd Cotton Mills, to which the defendant Lloyd Cotton Mills excepted, and, relying upon both exceptions, it appealed to this Court.

*No counsel for plaintiff.*
*Mangum & Woltz for defendant.*

WALKER, J., after stating the facts: We are of the opinion that the judge erred in reversing the order of the clerk and holding the letters of administration, which had been issued by him, to be valid. The statute provides, under the title Jurisdiction of Clerk of Superior Court, that "he shall have jurisdiction within his county to take proof of wills and to grant letters testamentary, letters of administration with the will annexed, and letters of administration in cases of intestacy, in the following cases: Where the decedent at, or immediately previous to, his death was domiciled in the county of such clerk, in whatever place such death may have happened." Revisal of 1905, sec. 16. There are other subjects of his jurisdiction enumerated, but the provision stated by us is the only one pertinent to this case.

It will be seen, therefore, that the clerk of Lincoln Superior Court had no jurisdiction or authority to grant the letters of administration unless James Scism was domiciled in Lincoln County at the time of his death. The word "domicile" has been variously defined, but its meaning may be accurately expressed, as the residence of a person at a particular place, with the intention to remain there permanently, or for an indefinite length of time, or until some unexpected event shall occur to induce him to leave the same. Phillimore Domicile, 13; *Mitchell v. U. S.*, 21 Wallace, 353 (22 L. Ed., 584, 586); *Merrill v. Morrisett,* 76 Ala., 433,

·437; *Littlefield v. Brooks,* 50 Maine, 475, 477; *Stout v. Leonard,* 37 N. J. L., 492, 495; Matter of Steer, 3 H. and N., 594; Black's L. Dict., ·"Domicile." In its ordinary acceptation, a person's domicile is the place where he lives or has his home. It is distinguished from "resi-·dence" or "inhabitancy," the three terms not being exactly convertible. *Horne v. Horne,* 31 N. C., 104. Domicile is of three sorts—domicile by birth or of origin, by choice, and by operation of law. The first is the ·common case of the place of birth, *domicilium originis;* the second is that which is voluntarily acquired by a party, *proprio motu;* the last is consequential, as that of the wife arising from marriage. Story, Con-·flict of Laws, sec. 46; Black's Dictionary. It is universally held, and ·clearly so by this Court, that in order to constitute a domicile by choice, two essential things must concur, which are "residence" and "intent" to remain at the place for an indefinite period. *Horne v. Horne, supra; Plummer v. Brandon,* 40 N. C., 190; 14 Cyc., p. 838, and note 22, where ·many cases are collected from nearly every State of the Union and from England and Canada.

In the *Horne case* it was held that two facts must concur to establish a domicile: first, residence, and secondly, the intention to make it a home (page 99 of 31 N. C., Anno. Ed.). We will refer to this case again more at large, as it is decisive of this one. The Court, by *Chief Justice Nash,* said in *Plummer v. Brandon, supra:* "The acquisition ·of a new domicil does not depend simply upon the residence of the party; the fact of residence must be accompanied by an intention of perma-nently residing in the new domicil, and of abandoning the former; in ·other words, the change of domicil must be made manifest, *animo et facto,* by the *fact of residence* and the intention to abandon. *De Bonne-val v. De Bonneval,* 6 Eng. Eq. 502, 1 Curt. 856; *Craigie v. Lewin,* 7 Eng. Eq. 460, 3 Curt. 435. *Sir Herbert Jerman Trest* in the latter case says the result of all the cases is that there must be the *animus et factum,* and that the principle is that a domicil once acquired remains until another is adopted or the first abandoned, and that the length of residence is not important, provided the *animus* be there. If a person goes from one country to another with the *intention* of remaining, that is sufficient, and whatever time he may have lived there is not enough, unless there be an intention of remaining." The presumption of law being that the domicil of origin subsists until a change of domicil is proved, the *onus* of proving the change is on the party alleging it, and the onus is not discharged by merely proving residence in another place, which is not inconsistent with an intention to return to the original domicile. It therefore is settled that before there can be a change of domicile there must be not only an intent to acquire another home but that intention must be fully executed by *actual* residence in the new

place, with the purpose of remaining there and not returning to the former domicile. The party must have gone to the new home, or, in other words, he must have reached the place in his journey thither, with present settled intention of remaining in the chosen locality for an indefinite length of time. If he fails to reach his destination, or the requisite intent is lacking, there is no new domicile and the domicile of origin is not displaced. The length of residence or the particular kind of place selected is not material, but it is absolutely essential that he should be at the chosen place for his new domicile before any change is effected. 14 Cyc., 840. It is said in Ruling Case Law, Vol. 9, p. 542, sec. 6: "To effect a change of residence or domicile, there must be an actual abandonment of the first domicil, coupled with an intention not to return to it, and there must be a new domicil acquired by *actual* residence in another place or jurisdiction, with the intention of making the last-acquired residence a home." *Residence,* combined with the intention to remain, is required to constitute domicil. *Ibid.,* p. 543, sec. 6; *King v. King,* 74 N. J. Eq., 824. And again, in the same volume, at page 553, sec. 18, it is said: "The well-established rule is that a domicile is not lost until a new one is acquired. This follows from the proposition that every one must at all times have a domicile somewhere. A person *sui juris* may change his domicile as often as he pleases. To effect such a change, naturalization in the country he adopts as his domicile is not essential. But there must be a voluntary change of residence; the residence at the place chosen for the domicile must be *actual;* and to the fact of residence there must be added the *animus manendi.*" The Court, in *Mitchell v. U. S.,* 21 Wallace (88 U. S.), 350 (L. Ed., p. 588), said: "A domicile once acquired is presumed to continue until it is shown to have been changed. *Somerville v. Somerville,* 5 Ves., 787; *Harvard Coll. v. Gore,* 5 Pick., 370; Whart. Confl. Law, sec. 55. Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation. *Crookenden v. Fuller,* 1 Swab. & Tr., 441; *Hodgson v. DeBeauchesne,* 12 Moore, P. C., 288, 1858. To constitute the new domicile two things are indispensable: first, residence in the new locality; and second, the intention to remain there. The change cannot be made except *facto et animo.* Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the *animus* to change the prior domicile for another. Until the new one is acquired, the old one remains. Whart. Confl. L., sec. 55, and the authorities there cited. These principles are axiomatic in the law upon the subject." And so it has been held that where a man starts on an extended journey, intending never to return to the domicile he is leaving and to establish a new domicile elsewhere, he does not lose the one left

until the new one has actually been established, and while in transit he retains the former domicile. *Barhydt v. Cross,* 156 Iowa, 271 (40 L. R. A. (N. S.), 986, and note); *Borland v. Boston,* 132 Mass., 89. In the *Borland case* it appeared that one domiciled in Boston, Mass., went to Europe in 1876 with his family for an indefinite term of absence, and remained abroad until 1879. On leaving he had determined never to return to reside in Boston, and before 1 May, 1877, he had decided to take up his residence on his return in Waterford, Conn., and on his return he went there to reside. It was held that his "domicile" was in Boston on the first of May, 1877. And in the *Barhydt case* it was held that one does not lose his domicile by starting on an extended journey with the intention of establishing the domicile elsewhere until he has actually established such domicile. To the same effect is *Plummer v. Brandon, supra.* It was held in *Fulton v. Roberts,* 113 N. C., 426, that one, before he can acquire a domicile at a particular place, must have actually resided there with the intention of making it his home. In the case of *Grimestad v. Lofgren,* 127 Am. State Rep.,· 566, the facts show that Grimestad was on his way with himself and family and household stuff to the State of North Dakota, for the purpose of taking up a permanent residence there, being at the time in the State of Minnesota, but before reaching the North Dakota line his personal property was levied upon. The question there was one of domicile under the exemption laws of the State of Minnesota, and the Supreme Court of Minnesota approved the following charge of the court, as will appear on page 569: "He had all the rights of a citizen of Minnesota, not having departed from the State. His family were here, and had been here, and until a party takes his family out of the State, as long as they are here, although he may start for that purpose, he is protected by the exemption laws of the State. Had they moved across the river and he had come back here with his team, it would be another thing. He was either a resident here or, according to the testimony, a resident of North Dakota. A man's residence does not cease in this State so long as it is his abiding place, and there is no evidence here that a change had taken place which would rob him of his right as a citizen of Minnesota. On that point I instruct you as a matter of law." In *Somerville v. Somerville,* 5 Vesey, Jr., 750, the Master of the Rolls, said: "The original domicile or, as it is called, the *forum originis,* or the domicile of origin, is to prevail until the party has not only acquired another but has manifested and *carried into execution* an intention of abandoning his former domicile and taking another as his sole domicile." It was held in *Lamar v. Mahony,* Dudley (Ga.), 92, that if a person intending to change his domicile has not fully effectuated his purpose, but is merely in *in itinere,* having had no actual residence in the place to which he

27—177

intends to remove, but being merely in *in itinere* or, in other words, on his way, or in the prosecution of his journey, without reaching the place where he intends to make his home, or reaching a place without such intention, there has been no change of domicile. That every man is free to change his home, and if such choice be made, followed by his presence *there,* with the intention to remain, even if it be but for a very short time, and without regard to his manner of living there, whether as a boarder merely or an independent housekeeper, a change of domicile takes place, but that in order for this to be the case it depends altogether upon the concurrence of two things: an *actual* residence in the new place and the *intention* to adopt it as his home or to remain there indefinitely. But a case of great weight, because the decision emanated from a court of the highest authority, and the opinion was delivered by a most eminent jurist, is *Otis v. Boston,* 12 Cash., 44, it is said by *Chief Justice Shaw:* "It is laid down as a fixed rule on this subject that every man must have a domicile; that he can have but one; and that, of course, a prior one will not cease until a new one is acquired. It is then asked, What is the condition of one who has purchased or hired a house, or otherwise fixed his place of abode in another place, left the town of his last abode, with all his property and furniture, and is on his way to his new abode, is he an inhabitant of the place from which he was departed? If his removal were towards another town in this State, we think his place of being an inhabitant would not be changed. He would continue to be an inhabitant of the State, and taxable in some town, and the only question would be, in which he was inhabitant on the first of May. Three might claim him: The one he has left, the one he is in, and the one to which he is proceeding. In such case we think the rule would apply, and his home would not be changed, either to the place of his actual bodily presence or of his destination, because in neither would the fact of actual presence and the intent to reside occur. Not the place where he was *in itinere,* for want of intent; nor his destination, for want of his actual residence. If he had left the State and actually passed its limits on his way to a distant State, it would certainly be a question of more difficulty in its various aspects as fixing his citizenship with a view to succession and the like." The case of *Horne v. Horne,* 31 N. C., 99, is conclusive, as an authority, against the plaintiff, and entirely decisive of the question being discussed. The case is singularly like this one. There it appeared that shortly before his death Jack Horne had left South Carolina and had come into this State, intending to make his home with William Horne, a kinsman, and there cultivate a farm with the help of William Horne, using his slaves as laborers. The evidence was not clear as to whether he had actually removed to the State, but the judge substantially told the jury

that if he had come into Anson County, with the intent to live there permanently or for an indefinite time, although by reason of his death so soon thereafter his purpose was not fully consummated, they would find that his domicile was here and not in South Carolina, his domicile of origin, but in expressing this view he used the following language: "If the deceased had come to Anson County, in this State, for the purpose of settling there permanently or for an indefinite time, his domicile would be there, *although prevented from doing so by death.*" With reference to this instruction the Court said, it being of the language quoted above: "There is some confusion in the latter clause. It is obvious, however, from the context of the whole sentence his Honor did not mean if he had been prevented by death from reaching this State, if he had died *in transitu.* In that case his domicile of origin would still have continued, for he would not have acquired a new one, and he had already told the jury that a domicile could not be lost until another was acquired. And in the same sentence he had stated to them, if the deceased had abandoned his home in South Carolina and *had come to Anson, etc.* We presume the intention of the charge in this part was to instruct the jury that the length of time during which the deceased enjoyed his new home was not material to the question of the new acquisition. In this view the charge was correct. Residence, for however long a time it may be continued, cannot constitute a domicile without the intention of permanently making it a home, nor can the shortness of time in which the new home is enjoyed defeat the acquisition when accompanied with the intention, for in the latter case there would be the *factum et animus.* These views are sustained by the cases of *De Bonneville v. De Bonneville,* 7 Eng. Eq., 502; *Craige v. Lewin, ibid.,* 560; *Plummer v. Brandon,* 40 N. C., 190, and Story Conflict of Laws, ch. 3." It will be observed that this is precisely our case, for this Court explicitly said that if while in via, or *in itinere,* he had died before reaching his destination or coming into Anson County, he was not domiciled there at the time of his death. *Horne v. Horne, supra,* has since been frequently approved, and is regarded now as the accepted law relating to domicile. It therefore governs our case.

Residence at the place in question must be shown to have existed in order that the party's domicile may be deemed to have been established there. 14 Cyc., 839, and note, citing many cases to support the text. This actual residence must be coupled with an intention to remain (*animus manendi*), as a prerequisite of domicile or, in other words, there must be the present intention of permanent or indefinite living in a given place or country, or negatively expressed, the absence of any present intention of not residing there permanently or for an indefinite time. *Price v. Price,* 156 Pa. St., 617, 626. So insistent is the law upon

residence as an essential element of domicile that the party who attempts to make a change of his domicile must actually have arrived at the new place before any such change takes place and another home is acquired. This settled rule was thus expressed in *Littlefield v. Inh. of Brooks,* 50 Me., 475: "Every one at birth receives a domicile of origin, which adheres till another is acquired; and so throughout life each successive domicile can only be lost by the acquisition of a new one." Westlake's Private International Law, 33. While *in transitu* the old one remains. It continues till a new one is acquired, *facto et animo.* The Roman law was otherwise. But such is not our law. The old domicile continues till the acquisition of the new one. Story's Conflict of Laws, sec. 48. The plaintiff has a domicile somewhere. He is to be deemed an inhabitant of some place. He was *in itinere.* He was not an inhabitant of Old Town, to which he was going, for the fact of personal presence was wanting. He was not an inhabitant of Bangor, for the intention to be one, which is an indispensable requirement, did not coexist with the fact of his personal presence. The old domicile was not lost, for the new one was not gained." That case is typical of the very many upon this subject which have been decided in this country and elsewhere, and which will be found in 14 Cyc., 833, 842, and notes. It would be useless to cite all of them by name, as they all have the same general trend and agree invariably in the principle stated. The same result, of course, follows where instead of the change of domicile being interrupted by death or other accident, the intention is abandoned, while on a journey to the new locality. The old domicile remains as it was before any change was attempted to be made. *Ringgold v. Barley,* 5 Md., 186; *Cross v. Black,* 9 Gill & J., 198; *Shaw v. Shaw,* 98 Mass., 158.

The validity of the letters of administration depends upon the domicile of James Scism being in Lincoln County at the time of his death. It is only in the absence of a domicile *in this State* that assets in the county will confer jurisdiction to grant letters. Rev., sec. 16, subsec. 3. The fact that the furniture had been sent into Lincoln County has no significance except as evidence of an intent to change the domicile. It did not confer jurisdiction, as we have seen, and surely it will not be contended that this single fact fixed the domicile in that county, for it clearly did not, neither under the general law nor under our statute.

The question is such an important one in the law of administration that we think it justifies a more extensive reference to the authorities. The uniform current of decision upon this question, as we have stated it, is well illustrated by the following statements of the doctrine which we have called from the authorities cited below. A domicile once acquired is presumed to continue until it is shown to have changed. *Mitchell v. U. S.,* 21 Wall., 350; *Somerville v. Somerville,* 5 Vesey, 787;

*Harvard College v. Gore,* 5 Pick., 370; Whart. Confl. Laws, sec. 35. Where a change of domicile is alleged the burden of proving it rests upon the person making the allegation. *Mitchell v. U. S., supra.* To constitute a new domicile two things are indispensable: first, residence in the new location; second, the intention to remain there. Mere absence from a fixed home, however long continued, cannot work the change. *Anderson v. Anderson,* 42 Vt., 352; *Gardner v. Board of Education,* 5 Dakota, 259. It is settled by many well-adjudged cases, especially by the case of *Cross v. Black, supra,* that a citizen of one State may break up his establishment and, with the avowed purpose of becoming a resident of another, may actually leave his place of former abode, yet if, before reaching the point of his intended destination, he changes his purpose, he does not thereby forfeit his residence or his rights as a citizen at the place of his first abode. The mere intention to acquire a new domicile without the fact of an actual removal avails nothing, neither does the fact of a removal without the intention. *Somerville v. Somerville, supra; Harvard College v. Gore, supra; Ringgold v. Barley,* 5 Maryland Rep., 186. In the latest case on the subject in the House of Lords, decided in May, 1868, *Lord Chancellor Cairns* said that the law is beyond all doubt clear with regard to the domicile of birth, that the personal status indicated by that term clings and adheres to the subject of it until an actual change is made by which the personal status of another domicile is acquired. *Bell v. Kennedy,* Law Rep., 3 H. L., 307. The former domicile remains until both the intent and fact of change of actual residence to another place have occurred to establish a new domicile there. *Shaw v. Shaw,* 98 Mass., 160. To effect a change of domicile there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence within another jurisdiction, coupled with the intention of making the last acquired residence a permanent home. The case of *Smith v. The People,* 44 Ill., 16, may be referred to in support of this doctrine, and other cases there cited. *Smith et al. v. Croom et al.,* 7 Fla., 200; *Shaw v. Shaw,* 98 Mass., 158. But the doctrine does not need the citation of authorities in its support. *Hayes et al. v. Hayes et al.,* 74 Ill., 312. A person *sui juris* may change his domicile as often as he pleases. There must be a voluntary change of residence; the residence at the place chosen for the domicile must be actual; to the factum of residence there must be added the *animus manendi;* and that place is the domicile of a person in which he has voluntarily fixed his habitation, not for a mere temporary or special purpose, but with a present intention of making it his home, unless or until something which is uncertain or unexpected shall happen to induce him to adopt some other permanent home. *Harrell v. Harrell,* 39 N. J.

REYNOLDS *v.* COTTON MILLS.

Eq., 379. To acquire a "domicile of choice" there must concur two things: an intention to change and a taking up of an actual abode at the place selected as a new domicile; and a new domicile is not acquired until there is not only a fixed intention of establishing a permanent residence, but also the carrying out of the intention by actual residence. *Boyd's Exr. v. Commonwealth,* 149 S. W. Rep., 1022. The general rule, and for practical purposes a fixed rule, is that a man must have a habitation somewhere; he can have but one; and therefore, in order to lose one, he must acquire another. This is the test, the practical test; and it is hardly necessary to say how important it is to have a practical rule, and a general rule. One of the fixed rules on the subject is this, that a purpose to change, unaccompanied by actual removal or change of residence, does not constitute a change of domicile. The fact and the intent must concur. He must remove, without the intention of going back. The question here is whether he can abandon one without acquiring another, and we think it has always been held that he cannot. *Bulkley v. Inhabitants of Williamstown,* 69 Mass., 495. Those and the following cases emphasize sharply the necessity of actual presence and residence in the new location, as an essential condition or prerequisite to a change of domicile. "Undoubtedly, residence is a question of intention. In cases involving it, the inquiry is *quo animo* the party either moved to or from the State. And upon the solution of this question depends the fact whether the petitioner has gained or lost a residence. But before this question can arise an actual removal must have taken place. A mere intention to remove not consummated, can neither forfeit the party's old domicile nor enable him to acquire a new one. Removal out of the State, without an intention permanently to reside elsewhere, will not lose residence, nor will a mere intention to remove permanently, not followed by actual removal, acquire it. Case of James Casey (insolvent debtor), 1 Ashmead, 126." *Fry's Election Case,* 71 Pa. St., 302. "If a person has actually removed to another place, with an intention of remaining there for an indefinite time, and as a place of fixed present domicile, it is to be deemed his place of domicile, notwithstanding he may entertain a floating intention to return at some future period." *Kellar v. Baird,* 52 Tenn. Rep., 39. "The civil law defines domicile to be the place where the domestic hearth has been established, from which the resident does not depart except for a temporary purpose and *animo revertendi."* *Morgan v. Nunes,* 54 Miss., 308. "One cannot make a home in a place merely intending to do so. Whensoever the intention is conceived the home does not exist until the intention is executed by an actual concurring *bodily* presence." *Fayette v. Livermore,* 62 Me., 229. "In order to accomplish a change of residence there must be not only the intention to

change but the fact of removal. Neither is sufficient without the other. (*Ballinger v. Lantier,* 15 Kan., 608)." *Adams v. Evans,* 19 Kan., 174. See, also, note 70 to 14 Cyc., at pp. 852 and 853, and the following cases stating the same doctrine: *Ringgold v. Barley,* 5 Md., 186; *Cross v. Black,* 9 Gill & J. (Md.), 198; *State v. Frest,* 4 Harr. (Del.), 558; *Ennis v. Smith,* 14 How. (U. S.), 423 (14 L. Ed., 472); *Munro v. Munro,* 7 Cl. & F., 842; *Beecher v. Am. Council,* 114 Mich., 228; *Morris v. Gilmer,* 129 U. S., 228; *Concord v. Rumney,* 45 N. H., 423; *Merrill's Heirs v. Morrisett,* 76 Ala., 433; *S. v. Dayton,* 77 Mo., 678; *Valentine v. Valentine,* 61 N. J. Eq., 400; *De Meli v. De Meli,* 120 N. Y., 485; *Price v. Price,* 156 Penn. St., 617; *Lindsay v. Murphy,* 76 Va., 428; *Dean v. Cannon,* 37 W. Va., 123; *Kempster v. City of Milwaukee,* 97 Wisc., 343; *Sommerville v. Ld. Sommerville,* 5 Vesey Jr., 150; *Roselly v. Com.,* 110 Va., 229; *In re Est. of Titterington,* 130 Iowa, 356; *Reed's Will,* 48 ·Oregon, 500; *Parsons v. Bangor,* 61 Me., 457; *Barhydt v. Cross,* 40 L. R. A. (U. S.), 986 and note; *Channel v. Capen,* 46 Ill. App., 234.

This brings us to the next question as to the right of attacking the validity of the letters. This Court has held that it can be done if there is a want of jurisdiction, as in the case where there is a lack of the requisite domicile, under our statute, which makes the fact of domicile a jurisdictional one by explicit language to that effect. *Collins v. Turner,* N. C. Term Rep., p. 105 (4 N. C., 541,.Anno. Ed.). Some cases hold that the attack upon the order or judgment of the court may be made collaterally, while others decide that it should be by a direct proceeding. This, as we will see hereafter, may depend upon the form of the record in each particular case and the special question involved. In this instance the defendant moved in both ways, collaterally and directly, so that in one or the other method he has adopted the right procedure.

In *Fann v. R. R.,* 155 N. C., 136, it was said, by *Justice Hoke,* that where the jurisdictional facts appear on the record the attack must be by a direct proceeding to set aside the letters. In *Springer v. Shavender,* 118 N. C., 33, *Justice Avery* said, in regard to a similar question: "This Court, in *Collins v. Turner,* N. C. Term Rep., 105 (541), sustained the principle upon which the decision in this case rests by holding that the grant of letters of administration on the other hand, in a county where the court had no jurisdiction.of the subject-matter, was utterly void and might be attacked collaterally, thus marking the distinction between that and the case where, dealing by proper authority with the subject-matter, the court has inadvertently deprived the lawful claimant of the administration. In the early case of *French v. Frazier,* 7 J. J. Marshall (Ky.), 425, the Court, upon the principle that an

administration upon the estate of a person then alive was void for all
purposes and could be impeached collaterally, *held,* as did this Court in
*S. v. White,* 29 N. C., 116, that a debtor of the alleged decedent could
set up the plea that the plaintiff was not administrator." The state-
ment in the *Fann case* would seem to accord with the general principle
that where the record on its face, by presumption of law or a recital
of facts, shows jurisdiction, a judgment cannot be assailed collaterally,
but it must be done by a direct proceeding. If, though, the want of
jurisdiction appears on the record it can be collaterally attacked. *Doyle
v. Brown,* 72 N. C., 393; *Rackley v. Roberts,* 147 N. C., 201; *McDonald
v. Hoffman,* 153 N. C., 254. Jurisdiction is presumed where the con-
trary does not appear on the record. *Bernard v. Brown,* 118 N. C.,
701; *Brittain v. Mull,* 99 N. C., 483; *Brickhouse v. Sutton, ibid.,* 103;
*Morris v. Gentry,* 89 N. C., 248; *Henderson v. Moore,* 125 N. C., 383;
*Hargrove v. Wilson,* 148 N. C., 439. "Every court, where the subject-
matter is within its jurisdiction, is presumed to have done all that is
necessary to give force and effect to its proceedings, unless there be
something on the face of the proceedings to show to the contrary. This
must be the rule unless we adopt the conclusion that the court is unfit
for the business which by law is confided to it." *Marshall v. Fisher,*
46 N. C., 111, by *Pearson, J.,* citing *Beckwith v. Lamb,* 35 N. C., 400.
This Court has held that the proper recital in a judgment makes it,
*upon its face,* valid, but it is competent for a party to show the truth
of the matter if the recital be false, but this must be done directly and
not collaterally. *Ricaud v. Alderman,* 132 N. C., 62, at p. 64. These
principles easily reconcile the *Shavender* and the *Fann cases,* even if
they are apparently in conflict, which they are not if correctly under-
stood. The application for letters in this case recites "that James Scism,
*late of said county of Lincoln,* is dead, intestate, etc." We must take
this to mean that he was domiciled in Lincoln County, and thus con-
strued, it shows the proper domicile. The language used was not very
apt, but is sufficient by fair construction to show domicile, at least,
*prima facie.* We would "stick in the bark" if we held otherwise, by
adhering strictly to the letter. It results, therefore, that the direct
proceeding to recall the letters was the proper one.

But it is suggested, and was so held by the judge, that defendant has
no interest in the matter concerning the validity of the appointment of
plaintiff as administrator, and therefore could not move to vacate it.
Why he has not we fail to see. It would appear that it is vitally inter-
ested in the question and is about the only party who is concerned.
Plaintiff, as administrator, has brought this suit to recover large dam-
ages against the defendant, and the latter has the clear right to inquire
if he is entitled to sue. *Collins v. Turner, supra,* held that letters of

administration granted in a county not the place of decedent's domicile are void, citing Hard., 216, and Toller, 90, where it was held: "If administration be granted by an incompetent authority, as by a Bishop, when the intestate had not *bona notabilia*, or by an Archbishop, of effects in another province, it is void." In that case and *Smith v. Munroe*, 23 N. C., 345, the fact of nonresidence was admitted. Any party interested or affected by a void judgment may attack it collaterally, in a proper case, or by a direct proceeding to have it stricken from the record as a nullity. The Court, by *Rodman, J.* (who was of most excellent learning in such matters), held in *Hervey v. Edmunds*, 68 N. C., 243, that an irregular judgment could be impeached only by some party to it, but a void judgment as, for instance, when the court lacked jurisdiction, could be attacked collaterally where the validity appeared on its face, or directly when it did not, and this could be done by *any* person interested in it or affected by it, whether a party to it or not. And it was intimated, if not held, that where the judgment is void it may be avoided or stricken from the record by the court, *ex mero motue*, or at the instance of any person not interested in having it done, and he added, "this was decided in *Winslow v. Anderson*, 20 N. C., 1, and we take it to be reasonable." To the same effect are *Dobson v. Simonton*, 86 N. C., 492; *Walton v. McKesson*, 101 N. C., 428, 442. In the *Winslow case, supra*, Chief Justice Ruffin said that any person who is affected in interest by it may claim, for the purpose of justice (*ex debito justiciae*), the exercise of the court's power to vacate a judgment which is void. So much for the right of the defendant, in the action for damages, to intervene. It would appear that the letters of administration were taken, or mainly so, for the purpose of bringing the action.

There is one question left for our consideration. The judge, on plaintiff's motion, allowed him to become a party to the action, under the new letters of administration issued by the clerk in Gaston County. Taking letters in that county, and requesting to be made a party thereunder, has somewhat the effect and force of an admission that the prior letters were void; but it is, of course, not conclusive, and we lay that feature out of the case. The judge erred in allowing the plaintiff to be admitted as party to the record, as the time for commencing the action had fully expired, if for no other valid reason. *Bennett v. R. R.*, 159 N. C., 345. This is so under *Hall v. R. R.*, 149 N. C., 108, a similar case, where we said: "Since the decision in the former appeal the plaintiff has qualified as administrator in this State, and has become a party to this action, and an amended complaint has been filed, stating the fact of his qualification and further alleging that the death of the intestate was caused by the defendant's negligence, the allegations in this respect being the same as those of the first complaint. As the plaintiff

did not qualify as administrator of the intestate in this State until after the commencement of this suit and the expiration of one year from the death of his intestate, he cannot maintain this action as such administrator. This is settled by the recent decision of the Court in *Gulledge v. R. R.,* 147 N. C., 234; approving *Best v. Kinston,* 106 N. C., 205; *Taylor v. Cranberry Co.,* 94 N. C., 526; *Roberts v. Ins. Co.,* 118 N. C., 434, and *Tayloe v. Parker,* 137 N. C., 418. See, also, *Gulledge v. R. R.,* at this term (on rehearing), where the question is discussed by *Justice Brown,* with a full citation of the authorities. The action by the plaintiff as administrator, qualified in this State, is deemed to have been commenced when he was made a party to the action as such and joined in the amended complaint," citing *Hester v. Mullen,* 107 N. C., 724. The *Hall case* was approved in *Bennett v. R. R., supra,* where the Court, after quoting from the case, also said, concerning the introduction of a new party: "While courts are liberal in permitting amendments, such as are germane to a cause of action, it has frequently held that the court has no power to convert a pending action that cannot be maintained into a new and different action by the process of amendment. The court has no power, except by consent, to allow amendments, either in respect to parties or the cause of action, which will make substantially a new action, as this would not be to allow an amendment but to substitute a new action for the one pending," citing *Clendenin v. Turner,* 96 N. C., 416; *Merrill v. Merrill,* 92 N. C., 657; *Best v. Kinston,* 106 N. C., 205.

A careful review of the record and the several questions raised in the appeal satisfies us that there was error in the rulings of the Court. The clerk's order should have been affirmed and the action for damages dismissed, unless the plaintiff can show better reason than now appears for further prosecuting it, which would seem to be improbable.

Error.