In the Matter of the Application of Harriet H. Andrews, Petitioner, against Mark Graves and Others, Constituting the State Tax Commission of the State of New York, Respondents.

Third Department, January 7, 1942.

*Henry M. Stevenson*, for the petitioner.

*John J. Bennett, Jr., Attorney-General [Wendell P. Brown and John C. Crary, Jr., Assistant Attorneys-General*, of counsel], for the respondents.

Schenck, J. This proceeding is brought on for a review of a final determination of the State Tax Commission affirming assessments of personal income tax upon petitioner's application for revision thereof.

The sole issue presented is one of domicile. For many years petitioner was a resident of South Kortright, N. Y., where she owned a dwelling house and which she considered her fixed and permanent home until 1937, when she alleges she determined to make her home in Bermuda, where she had owned a dwelling. She deeded the Bermuda residence to her daughter with an oral reservation of right of occupancy. She deeded the Kortright house and likewise retained by written reservation the right to use and occupancy of the same during her lifetime. Her own furniture remains in the Kortright home. There does not appear to have been any variation in her life and no act has been shown that would indicate an intention to change her domicile. She remains a citizen of the United States and in a letter written in May, 1938, she states, "I am anxious to get home for many reasons." The home referred to was South Kortright. It did not refer to a dwelling place in Bermuda which she had transferred to her daughter, reserving by oral agreement the right to the use thereof. It clearly referred to the place where she had lived for many years and which she admittedly considered her home at least until 1937. She was not taxed as a resident of Bermuda. All of her securities were in the State of New York and as a citizen of the United States she was not subject to tax under the laws of Great Britian. There is nothing in this record to show a clear intent on her part to actually change her domicile from the country of her birth and where she had resided during a long lifetime to the island of Bermuda.

The Bermuda property was purchased by petitioner's husband in 1920 and from then her time was divided between South Kortright and Bermuda. Her husband died in 1935. She continued to consider South Kortright her home until 1937, when she "just changed" and claims to have established Bermuda as her permanent home. She leased the Bermuda house for the winter season of 1938–1939. In 1938 she rented a place in Skaneateles and remained there during the summer with her two granddaughters. She spent part of the time in 1939 in New York State and in 1940 she lived in a rented apartment in Syracuse from October until May. She occupied the South Kortright house during the summer of 1940. She has not changed her will, executed in 1936, in which she gave South Kortright as her residence; she has not made application to become a citizen of Great Britian, and the registration of an automobile owned by her gives her residence as South Kortright. It is true she endeavored for some time to dispose of the South Kortright dwelling, but when it was finally sold the deed of conveyance contained a provision that she could occupy

it as a residence during her lifetime. Her own furniture remains in the premises. Prior to the sale of the South Kortright property she had transferred the title to her Bermuda property with an oral understanding that she could occupy it. The argument that the disposition of the South Kortright property is evidence of her abandonment of this State as her legal domicile is not convincing for she, likewise, divested herself of title to the Bermuda property. Apparently she has continued her customary habit of spending part of her time in Bermuda and part of her time in New York State and has at all times retained the right to the use of the South Kortright dwelling. I agree that a person may change his or her domicile for the purpose of avoiding taxation; however, there must be a fixed intention to abandon one domicile and acquire another. Such intention has not been demonstrated. There has been no factual change in her mode of life, nor may it be said that she was motivated by any patriotic impulse to change allegiance to another sovereignty as she continues to retain her United States citizenship.

The determination of the State Tax Commission should be confirmed.

HILL, P. J., and CRAPSER, J., concur; HEFFERNAN, J., dissents, in an opinion, in which BLISS, J., concurs.

HEFFERNAN, J. (dissenting). This is a proceeding in the nature of certiorari under article 78 of the Civil Practice Act and the related provisions of the Tax Law (§§ 199, 375) to review a final determination of the State Tax Commission, which affirmed assessments of personal income tax against petitioner for the years 1938 and 1939. The tax, amounting to the sum of $3,847.66, was paid under protest by petitioner and in this proceeding she is attempting to obtain a refund.

The only issue presented by the record is whether petitioner's domicile is in the State of New York or the island of Bermuda.

The material portion of the pertinent statutory provision reads:

" 7. The word ' resident ' applies only to natural persons and includes any person domiciled in the State, except a person who, though domiciled in the State, maintains no permanent place of abode within the State, but does maintain a permanent place of abode without the State, and who spends in the aggregate not to exceed thirty days of the taxable year within the State. In addition, it includes any person who maintains a permanent place of abode within the State and spends in the aggregate more than seven months of the taxable year within the State, whether or not domiciled in the State during any portion of said period, and such

a person shall be taxed the same as though he had been domiciled in the State during the entire taxable year * * *." (Tax Law, § 350, subd. 7.)

It is not disputed that petitioner was not within the State of New York for as much as seven months in either year. In the instant proceeding all the primary evidentiary facts are admitted.

Petitioner is seventy-five years of age. In 1892 she married Samuel Andrews. One daughter, now living, is the issue of this union. The husband died in 1935 in Bermuda and his remains are interred there. Except for a short period of residence in New York city this couple resided and had their domicile at South Kortright, Delaware county, N. Y., during their married life.

In 1920 Mr. Andrews purchased a house at Paget, Bermuda, which was furnished from his New York city house. From that time on petitioner and her husband customarily divided their time between New York and Bermuda, staying from about June first to the early autumn in South Kortright and then a short time in New York city before returning to Bermuda. Upon her husband's death petitioner inherited his entire estate.

In 1929 the daughter married a physician who resides and practices his profession in Bermuda and following her marriage the daughter thus established her residence there. One child, a daughter, was born as a result of this marriage.

After her husband's death petitioner during the years 1935–1937, inclusive, continued to spend her summers at the South Kortright house.

Petitioner asserts that in 1937 she elected to change her domicile from South Kortright to Bermuda and to establish her permanent home at the latter place. The crucial question for us to answer is whether or not she has effected a change.

It is a fundamental rule that every person is deemed to have a domicile somewhere. It is equally well established that every person has at all times one domicile and only one. Domicile may be divided into domicile of origin, domicile of choice and domicile by operation of law. (28 C. J. S. Domicile, § 4.) We are not here concerned with the domicile which the law attributes to a person independently of his own intention or actual residence. The domicile of origin is the domicile assigned to every child at its birth. (17 Am. Jur. Domicil, §§ 12, 13.) A domicile of choice is the place which a person has elected and chosen for himself to displace his previous domicile; it has for its true basis or foundation the intention of the person. (28 C. J. S. Domicile, § 6.)

In a strict legal sense that place is properly the domicile of a person where he has his true, fixed, permanent home and principal

establishment, and to which place he has, whenever he is absent, the intention of returning, and from which he has no present intention of moving. It is universally held that in order to acquire a domicile by choice these essentials must concur: (1) residence in the new locality, and (2) an intention there to remain. In other words, there must be a concurrence of the fact and the intent. A person *sui juris* may change his domicile as often as he pleases. The purpose for which a change of domicile is established is not material so long as the essential elements needed to constitute the change exist. Thus, it is immaterial whether the change was made to avoid or lessen taxation, to escape arrest on a criminal charge, or for any other motive. (17 Am. Jur. Domicil, §§ 2, 3, 13, 16, 26.) " A change of domicile may be made * * * for any reason whatever, provided there is an absolute and fixed intention to abandon one and acquire another and the acts of the person affected confirm the intention. * * * While acts speak louder than words, the words are to be heard for what they are worth." (*Matter of Newcomb*, 192 N. Y. 238, 251, 252.)

Apparently respondents do not question the good faith of petitioner. On a hearing held by the State Tax Commission she testified that during the year 1937 she determined to transfer her permanent home from South Kortright to Bermuda. We quote the questions of her counsel and her answers: " Q. Did you change your intention as to your permanent home during 1937? A. I made up my mind to change in 1937, to definitely establish Bermuda as my permanent home. Q. Had that continued to be your determination ever since then? A. Yes." She also testified that in arriving at this determination she was influenced by the fact that her only child was married and permanently settled in Bermuda and that the expense of maintaining the large South Kortright residence was heavy. The proof also shows that in 1937 she put the South Kortright property on the market for sale. She wrote three letters from Bermuda to a cousin of her late husband, one on May 19, 1938, one on May 1, 1939, and one on June 27, 1939, urging him to dispose of the property because, as she phrased it in the last letter: " I really find it too much for me — not only the expense but the burden of running it. I am really too old to carry on there alone and the children are too lonely there. Its a shame. I may have to close it up and just have a caretaker there." The fact that petitioner in good faith attempted to dispose of the South Kortright property during the years in question here furnishes forceful corroboration of her contention that she had abandoned the old domicile and had acquired a new one. (*Matter of Harkness*, 183 App. Div. 396.) Another significant item of evidence

in favor of petitioner's claim is that she did not vote in this State at any time after her declaration that she had made a change.

The testimony shows that sometime in the summer of 1940 petitioner occupied the South Kortright residence for a time. In October of that year she conveyed the premises to a neighbor but reserved the right to occupy the large house on the place during the remainder of her life on payment of a part of the taxes on the property in lieu of rent.

In determining whether petitioner effected a change of domicile it is important to scrutinize her acts, conduct and places of residence during the two years in question. It is not disputed that during the year 1938 she was in Bermuda from the beginning of the year until early in June when she came to New York. From June fifteenth to September fifteenth she lived in a rented house near Skaneateles for which she paid $2,200. From September fifteenth to November fifteenth she spent most of her time either in New York city or Syracuse. She sailed for Bermuda on November fifteenth and remained there the balance of the year. The house at South Kortright was not occupied by her at all during that year.

It is also undisputed that during 1939 petitioner was in Bermuda until October twenty-fifth except for two trips to New York, one in February and one in April, on each of which occasions she spent ten days or two weeks in that city.

In March, 1939, petitioner conveyed the Bermuda property to her daughter as a gift. She had an oral agreement with the latter, however, by which she reserved the right to occupy the house whenever she wished without payment of any rent. She also retained the title to the household furniture.

The principal grounds relied on by respondents to sustain their determination are that petitioner was in New York State at various times during the years 1938–1939; that her will, giving her residence as South Kortright, was executed in this State in 1936; that on the hearing her counsel stated his expectation to be that it would be probated in this State; that she never renounced her American citizenship; that her securities and property are here; that she owns an automobile, registered in her name, and in the application for registration her residence is given as South Kortright.

In addition to that respondents place great emphasis upon a sentence appearing in the letter of May 19, 1938, to which we have heretofore referred, written by petitioner to her husband's cousin concerning the sale of the property and other matters. After stating that she expected to visit the premises she concludes by saying: " I am anxious to get home for many reasons — do try

to sell my place." We think that all these incidents are without weight to turn the scales against the preponderating evidence that petitioner after 1937 regarded Bermuda as her real home or abiding place.

We likewise think that petitioner's failure to execute a new will after her election to change her place of residence and the fact that her securities are in this State are quite immaterial.

The fact that petitioner still retains her American citizenship is not inconsistent with her election to make Bermuda her domicile. Citizenship and domicile are not necessarily the same thing, for while citizenship depends on domicile, citizenship or nationality and domicile involve different principles. Thus, a person may adopt a foreign country as his domicile without being naturalized. (*Reynolds* v. *Lloyd Cotton Mills*, 177 N. C. 412; 99 S. E. 240; *Stadt-muller* v. *Miller*, 11 F. [2d] 732; 17 Am. Jur. Domicil, § 7.)

The proof shows that petitioner is the owner of a second-hand automobile used in connection with the operation of the farm connected with the South Kortright property. She testified that she never drove an automobile and has no license to operate a car in this State and that cars are not permitted in Bermuda. Having in mind the purpose for which this vehicle was used and that petitioner is incapable of operating it we think that little, if any, consideration, need be given to the statement in the certificate of registration as to petitioner's residence. (*Matter of Trow-bridge*, 266 N. Y. 283.)

Coming now to the letter to which respondents attach such importance we see nothing leading to the conclusion that petitioner regarded South Kortright as her domicile. Respondents apparently ignore the last sentence of that letter in which the writer said: " Do try to sell my place." That sentence clearly rebuts the inference of an intention on the part of petitioner to return to the former home permanently. We must remember too that this elderly woman was speaking colloquially and not in the terminology of the legal profession. Merely speaking of the domicile of origin as " home " without any act showing an intention to return to it permanently proves nothing. (*Texas* v. *Florida*, 306 U. S. 399.) It is common knowledge that a person irrespective of the number of years he may have been absent and although he has a permanent home elsewhere, invariably refers to his birth place as " home." It is not to be wondered at that this petitioner referred to the house in which she and her husband had lived more than forty years as " home."

In *Matter of Trowbridge* (*supra*) the Court of Appeals, in an opinion by Judge LOUGHRAN, held that decedent's domicile at the

time of death was in Connecticut and not New York despite proof to the effect that decedent voted in New York and repeatedly declared that New York was his residence. The court there said: " If at a given time a man exclusively makes his home with his family in a complete domestic establishment, intending so to occupy it for the rest of his days, the place of that habitation is then his domicile, no matter what he may say to the contrary."

Here, too, we think petitioner's domicile — her real home — is Bermuda. There is her permanent place of residence. There, also, reside the two persons nearest to her in life, her only daughter and her granddaughter. There also lie the remains of her deceased husband. Nothing remains in South Kortright except poignant memories. Certainly there is nothing in this record to support the contention that petitioner ever intended after 1937 to make her permanent home at South Kortright. Her actual physical residence and her major interests in life were elsewhere.

In defining the quantum of evidence necessary to support a decision of the Appeal Board in a proceeding under the Labor Law the Court of Appeals, in *Matter of Stork Restaurant, Inc.,* v. *Boland* (282 N. Y. 256, 273), said: " A finding is supported by the evidence only when the evidence is so substantial that from it an inference of the existence of the fact found may be drawn reasonably. A mere scintilla of evidence sufficient to justify a suspicion is not sufficient to support a finding upon which legal rights and obligations are based. That requires ' such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' (*Consolidated Edison Co.* v. *National Labor Relations Board,* 305 U. S. 197, 229.) The same test is applied in trials before a court and jury. Evidence which is sufficient to require the court to submit a question of fact to a jury is sufficient to support a finding by the administrative board. (Cf. *National Labor Relations Board* v. *Columbian E. & S. Co.,* 306 U. S. 292.) "

The same rule applies to a finding of respondents. Here there is no conflict in the testimony, no issue of credibility, no occasion to weigh evidence and choose between conflicting inferences. We think that the determination of respondents should be annulled on the law and facts, with fifty dollars costs and disbursements.

BLISS, J., concurs.

Determination confirmed, with fifty dollars costs.