IN THE MATTER OF THE ESTATE OF HALLIE M. CULLINAN, DECEASED.

(Filed 14 June 1963.)

**1. Domicile § 2—**

The domicile of the wife becomes that of her husband upon marriage, and upon his death does not revert automatically to her domicile prior to the marriage.

**2. Domicile § 1—**

Domicile remains until another is acquired and is not lost by mere change of residence, but in order to acquire a new domicile it is necessary that there be a change of residence to a new *locus* coupled with the intention of making it a permanent home.

**3. Same;   Wills § 8—   Evidence of change of domicile held insufficient to support an affirmative finding upon the issue.**

   The wife of a nonresident continued to live in the city of her husband's residence after his death. The evidence disclosed that thereafter she made visits to her mother who lived on the farm in this State where she was born and raised, that after her mother's death she made visits to this State on business and for family conferences, and during her last illness entered a hospital in a county adjacent her childhood home. *Held:* The evidence is insufficient to sustain an affirmative answer to the issue as to whether she had re-established her domicile in the county of her childhood home, notwithstanding testimony of expressions of her intent or desire to return to her childhood home at some future time and that she was permitted to vote by absentee ballot there.

APPEAL by Philip M. Carden, movant, from *Hobgood, J.,* January Civil Term 1963 of GRANVILLE.

Mrs. Hallie M. Cullinan died on 31 October 1960 in Watts Hospital, Durham, North Carolina. She was born in Stem, Granville County, North Carolina, on 11 May 1893, where she lived and taught school until sometime in 1918, at which time she accepted employment as a government worker with the Federal government in Washington, D. C. While in Washington as a government worker she was married to Charles H. Cullinan in 1927, whereupon they moved to New Jersey. The next year, 1928, they returned to Washington, D. C. and Mrs. Cullinan resumed her employment with the government. Mr. Cullinan was never a resident of North Carolina. After his death in 1945, Mrs. Cullinan continued her employment with the government.

The last will and testament of Mrs. Hallie M. Cullinan was probated before the Clerk of the Superior Court of Granville County in common form on 21 January 1961, and letters testamentary were issued to the persons named in said will as co-executrices, Emma Moore Summers of Durham, North Carolina, and Grace L. Moore of Washington, D. C. (sisters of testatrix).

The executrices entered upon their duties and filed inheritance tax returns in the State of North Carolina and with the proper authorities in the District of Columbia, and inheritance taxes were paid to the State of North Carolina on the entire estate of the testatrix and to the District of Columbia only on personal property belonging to the estate of the testatrix which was located in the District of Columbia at the time of her death.

Thereafter, Grace L. Moore filed a claim and later brought an action against the estate for expenses incurred on behalf of Mrs. Cullinan for nurses in January 1959. She resigned as co-executrix, and judgment was entered by consent of co-executrix Mrs. Emma Moore Summers and paid at the request of the majority of the devisees and legatees.

The evidence tends to show that the estate has been administered except as to the final distribution of assets.

In October 1962, Philip M. Carden, a nephew and beneficiary under the last will and testament of Hallie M. Cullinan, filed a petition before the Clerk of the Superior Court of Granville County praying that the proceeding be vacated and that letters testamentary theretofore issued be revoked on the ground that the jurisdiction in the matter lies in the appropriate courts of the District of Columbia.

The matter was heard before the Clerk, and the Clerk held that the movant is estopped from questioning the validity of the probate of the will of Hallie M. Cullinan by reason of his having participated in the settlement of the estate by signing a release for household and kitchen furniture, and participating in a meeting of the legatees and devisees, at which time it was agreed as to which corporate stocks each would take as a partial distributive share in said estate in the event such stocks were not sold to create assets, and by various and sundry acts, and entered an order accordingly.

The movant appealed to the Superior Court of Granville County where the matter was heard before a judge and jury.

The record further tends to show that the movant, about the time he filed the above petition, filed an application for letters of collection in the District of Columbia where certain moneys belonging to the estate of the testatrix were on deposit in a bank in Washington, D. C., and $1,500.00 in United States Treasury Bonds were held by the United States Treasury Department, which belonged to the testatrix.

In the hearing in the Superior Court, the issue submitted to the jury was as follows: "Was the deceased, Hallie M. Cullinan, at the time of her death on October 31, 1960, domiciled in Granville County, North Carolina?"

The evidence is to the effect that prior to Mrs. Cullinan's death she owned a one-fifth interest in a farm at Stem, in Granville County, North Carolina, the farm on which she was reared. There was a cottage located on this farm where her mother lived many years prior to her death in 1953. This cottage was in addition to the old farm house. After the death of Mrs. Cullinan's husband, in 1945, she visited her mother about four times a year; she spent her vacation there in 1953. At the time of her mother's death, the evidence tends to show, Mrs. Cullinan owned the major portion of the furniture in the cottage at Stem. Mrs. Emma Moore Summers testified: "When I refer to Stem, North Carolina, I refer to the frame house as the 'cottage' and the old homeplace as the 'farm house.' The furniture to which I referred was located in the cottage. She owned the bedroom suit in my

mother's room, the rugs, venetian blinds, and the draperies in that bedroom. In the living room she owned a bookcase, the rug, some pictures, lamps, and a desk. She owned a settee and two rockers in the front hall and also the rug in the front hall, the lamps, table * * *. In the front bedroom she owned a day-bed. In the kitchen she owned some kitchen utensils, the step-stool, the curtains, the venetian blinds, and she owned porch furniture. She paid a large portion toward installing the bathroom." Her furnishings were later stored, in 1954, and the house rented thereafter.

After her mother's death, in 1953, the evidence tends to show that Mrs. Cullinan came back to North Carolina only once or twice a year, on business or for family conferences, but that she spent only one night in the cottage at Stem, North Carolina, after her mother's death.

The evidence further tends to show that Mrs. Cullinan and Mrs. Emma Moore Summers and her husband considered remodeling the cottage as a home for Mr. and Mrs. Summers and for Mrs. Cullinan when she retired. The plans involved the purchase of the interest of the other heirs in the land at Stem, North Carolina. Approval of a loan from a local bank in Granville County was obtained for this purpose. The loan was never consummated, and Mr. and Mrs. Summers later purchased a home in Durham, North Carolina.

At the request of Mrs. Cullinan, her furniture, which had been stored in Stem in 1954, was removed to the home of Mr. and Mrs. Summers in Durham in 1958 and used in their home but remained the property of Mrs. Cullinan.

About the time Mrs. Cullinan retired in 1958, she had an operation which later turned out to be a malignancy and from which she never recovered.

The Chairman of the Board of Elections of Granville County testified that he had been Chairman of the Board for twenty years and that at the time of her death Mrs. Cullinan was a registered voter in North Carolina in the Stem precinct; that the last time she voted was in the general election in 1952. Other evidence is to the effect that she also voted in Stem in 1950.

According to the respondents' evidence, the testatrix always referred to Stem, North Carolina, as her home, and to her apartment in Washington, D. C., where she resided, as her apartment but never as her home. She authorized the transfer of the lease on the Washington apartment to her sister, Grace L. Moore, in July 1960.

The movant offered testimony tending to show that the testatrix had no plans to return to North Carolina upon her retirement, but had discussed prior to her illness the intention to enter the Eastern Star Home in Arlington, Virginia.

For several years prior to her retirement in 1958, Mrs. Cullinan spent her vacations on trips to Puerto Rico, Bermuda, Havana, and Jamaica. These trips were under the sponsorship of the Arthur Murray Dancing Studio or the Educational Credit Bureau of said studio.

It further appears that from 22 June 1949 until 27 June 1959 the testatrix spent with the Arthur Murray Dancing Studio in Washington a total amount of $12,265.80. And there is further testimony to the effect that prior to her retirement she planned to open a dance hall of her own in Washington and had the particular site in mind where she planned to conduct her dances.

The jury answered the above issue in the affirmative and judgment was entered accordingly.

The question of estoppel was not passed upon in the Superior Court. From the judgment entered, the movant appeals, assigning error.

*Watkins & Jarvis; Winders & Mitchell for movant.*
*William T. Watkins, Robert D. Holleman for respondents.*

DENNY, C.J. The only question for determination on this appeal is whether or not the finding of the jury to the effect that Mrs. Hallie M. Cullinan, at the time of her death on 31 October 1960, was domiciled in Granville County, North Carolina, is supported by competent evidence.

The parts of G.S. 28-1 applicable to the facts in this case are as follows, including subsections 1 and 4: "The clerk of the superior court of each county has jurisdiction, within his county, to take proof of wills and to grant letters testamentary, letters of administration with the will annexed, and letters of administration, in cases of intestacy, in the following cases: (1) Where the decedent at, or immediately previous to, his death was domiciled in the county of such clerk, in whatever place such death may have happened. * * * (4) Where the decedent, not being domiciled in this State, died in the county of such clerk, leaving assets in the State, or assets of such decedent thereafter come into the State."

Our decisions are to the effect that if the testatrix herein was not domiciled in Granville County, North Carolina, at the time of her death, the letters testamentary issued in this proceeding are absolutely void. *Collins v. Turner*, 4 N.C. 541; *Johnson v. Corpening*, 39 N.C. 216, 44 Am. Dec. 106; *Reynolds v. Cotton Mills*, 177 N.C. 412, 99 S.E. 240, 5 A.L.R. 284.

It follows that, if the testatrix was not domiciled in Granville County, North Carolina, at the time of her death, since she died in

Watts Hospital in Durham, North Carolina, the Clerk of the superior Court of Durham County is empowered by the above statute to probate the will of the testatrix if properly presented for probate, and to issue valid letters to the presently acting executrix of the last will and testament of Mrs. Cullinan. G.S. 28-1; *In re Franks*, 220 N.C. 176, 16 S.E. 2d 831; *Vance v. R.R.*, 138 N.C. 460, 50 S.E. 860

"Domicile is of three sorts — domicile by birth or of origin, by choice, and by operation of law. The first is the common case of the place of birth, *domicilium originis;* the second is that which is voluntarily acquired by a party, *proprio motu;* the last is consequental, as that of the wife arising from marriage." *Reynolds v. Cotton Mills, supra.*

Therefore, when Mrs. Cullinan married Charles H. Cullinan in 1927, his domicile became her domicile by operation of law, and continued so for the next eighteen years or until his death in 1945. It clearly appears from the record that whereever his domicile was it was never in North Carolina. Consequently, if Mrs. Cullinan was domiciled in North Carolina at the time of her death, she had to established such domicile by choice after her husband's death in 1945. Her domicile was not automatically re-established in North Carolina as the result of her husband's death.

In 17A Am. Jur., Domicil, section 5, page 199, it is said: "In a sense 'home' is synonymous with 'domicile.' Indeed, it has been said that no other word is more nearly synonymous; 'home' is the fundamental idea of domicil. However, 'home' and 'domicil' are not always of equal meaning. They may, and generally do, mean the same thing; but a home may be relinquished and abandoned while the domicil of the party, upon which depend many civil rights and duties, may in legal contemplation remain. Incidental references to a place as 'my home' are not conclusive against the existence of the domicil of the declarant in another place."

Ordinarily, a domicile continues and does not necessarily require actual residence to retain it after it is once acquired, but actual residence is required to establish it.

In *Horne v. Horne*, 31 N.C. 99, this Court said: "The term domicil, in its ordinary and familiar use, means the place where a person lives or has his home; in a large sense, it is where he has his true, fixed and permanent home, to which, when absent from it, he intends to return, and from which he has no present purpose to remove. Two things, then, must occur to constitute a domicil: first, residence, and second, the intention to make it a home — the fact and the intent."

In the case of *In re Martin*, 185 N.C. 472, 117 S.E. 561, Stacy, C.J., said: "Domicile is a question of fact and intention. Hence, to effect

a change of domicle there must be an actual abandonment of the first domicile, coupled with an intention not to return to it, and there must be a new domicile acquired by actual residence at another place, or within another jurisdiction, coupled with the intention of making the last acquired residence a permanent home. * * *"

The Court, in *Mitchell v. United States*, 88 U.S. 350, 22 L. Ed. 584, said: "A domicile once acquired is presumed to continue until it is shown to have been changed. * * * To constitute the new domicile two things are indispensable: First, residence in the new locality; and second, the intention to remain there. The change cannot be made except *facto et animo*. Both are alike necessary. Either without the other is insufficient. Mere absence from a fixed home, however long continued, cannot work the change. There must be the *animus* to change the prior domicile for another. Until the new one is acquired, the old one remains. * * * These principles are axiomatic in the law upon the subject."

There is no evidence in this record tending to show that Mrs. Cullinan ever resided in North Carolina after 1945 with the intent to establish her domicile in this State and to abandon her former domicile. In fact, there is no evidence tending to show that she ever came to North Carolina after 1945 except for the following purposes: (1) to visit her mother; (2) on business or for family conferences; and (3) to enter Watts Hospital during her last illness. After her husband's death, she continued to reside in the apartment where they had lived for many years until 1957, when she moved to another apartment at 4117 Davis Place, N. W. In her last will and testament which she executed on 18 March 1960, in Durham, North Carolina, she said: "I, Hallie M. Cullinan, of 4117 Davis Place, N. W., Washington, D. C., being of legal age and sound mind and memory, do make, publish and declare this my last will and testament * * *."

The further fact that she may have expressed an intent or desire to return to North Carolina at some future time, and that she was permitted to vote by absentee ballot in North Carolina in 1950 and 1952, were not sufficient to establish her domicile in Granville County, North Carolina, unaccompanied by actual residence there. *Burrell v. Burrell*, 243 N.C. 24, 89 S.E. 2d 732.

The evidence in the hearing below is insufficient to sustain an affirmative answer to the issue submitted to the jury, and the judgment based thereon is reversed and this cause is remanded for further proceeding in accordance with this opinion.

Remanded.